MOORE, J.
 

 _]jToni Edwards Barrios appeals a judgment that awarded her and her former husband, James C. Barrios II (“Buck”), joint custody of the couple’s two children and named Toni the domiciliary parent, but gave Buck physical custody for six days out of every two weeks. We affirm.
 

 Factual Background
 

 Toni and Buck were married in 1995. They had two children: Haley, born 5/14/02, and Emily, born 10/18/05. Buck left their marital home in Stonewall on April 8, 2009, and soon filed for an Art. 102 divorce including a prayer for “equal shared custody.” Toni reconvened, also seeking an Art. 102 divorce and,
 
 inter alia,
 
 joint custody with herself designated as the custodial parent and Buck to receive “reasonable visitation.”
 

 At a hearing on June 2, 2009, the parties announced they had agreed to joint custody by alternating weeks, with visitation by the off-week parent on Tuesday and Thursday evenings. The court entered an interim order to this effect.
 

 The matter proceeded to trial on August 4 and 11, 2009. Much of the testimony addressed financial matters not contested on appeal. Toni, who works as an administrative assistant for the First JDC District Attorney, has moved to Shreveport and is renting a house in Shreve Island which her parents bought for this purpose and lease to her for $1,100 a month.
 

 Toni testified that she has always provided the lion’s share of parenting for the girls, starting with 12- and 10-week maternity leaves; bathing, feeding, dressing; carrying them to and from daycare, preschool, church and doctors; and, most recently, taking them to and from St. Jo
 
 *326
 
 seph’s |2School. She testified that while they were still in Stonewall, Buck did little of this because (so she supposed) his job as a design engineer for Center Point Energy kept him on the road a lot, including long commutes to projects in Texas. Soon after he left her, however, Toni discovered that he was having an affair with a woman named Shelby Barrientos. Toni claimed she was not angry but “disgusted” by his conduct and by the fact that he lied to her about it for months.
 

 Toni also testified that while they had been using the week-on, week-off interim order, Haley (the older girl) seemed distracted and lacking in focus whenever she came back from a week with Buck, and both girls were resistant and tearful when they had to go with their dad. Toni admitted that she herself might have been a bit overwrought when she had to drop off the girls, and on one occasion goaded him about his girlfriend, but the children could not hear this because they were in the backseat of the truck watching a loud movie. Toni even took Haley to a clinical social worker, Leigh Ann O’Brien, for evaluation and group workshops, but never advised Buck that she had done so or felt it was necessary to advise him. Toni conceded that Buck was a good father but maintained that the girls were more bonded to her and needed stability. She asked the court to implement her proposed joint custody implementation plan (Exhibit D-7), making her the domiciliary parent, subject to alternating weekends, two hours every Wednesday evening, and split holidays and summers with Buck.
 

 Ms. O’Brien testified on Toni’s behalf, outlining her visits with Haley. She felt that the alternating week scheme had caused “adjustment |sproblems,” notably that Haley was afraid that once school started, Buck would not help her with her homework. Ms. O’Brien concluded that kids Haley’s age need a primary residence, especially with the “same-sex parent,” and felt that the best result would be to implement Toni’s proposed plan, Exhibit D-7.
 

 Buck testified that he has also moved to Shreveport, currently living in Spring Lake Apartments (where, coincidentally, Ms. Barrientos is his neighbor), and intended to look for a house in Broadmoor, near St. Joseph’s School. Also, he was in a new position at Center Point that would keep him in the office more and in the field less, so he felt he could now handle the daily care and transportation that the girls needed. He testified that the alternating week scheme had worked well; he noticed no anxiety in the girls, and allowed them to call Toni at least twice a day. He sensed the biggest problem was that Toni never wanted to let the girls go; he had no inkling that she had taken Haley to a therapist.
 

 Buck admitted he had not been totally honest with Toni, as some of his late hours were from after-work outings to Hooters with coworkers and time spent with Ms. Barrientos. He also agreed he had been blunt and insensitive, announcing without warning that he was leaving Toni. He maintained that his first few months with Ms. Barrientos were purely platonic, as she was the QC engineer with one of Center Point’s suppliers, notwithstanding literally hundreds of late-night cell phone calls. Buck asked the court to continue the alternating week schedule.
 

 \AAction of the District Court
 

 The court issued a written ruling on custody and visitation, citing La. C.C. art. 134 and restating the salient parts of the testimony. The court awarded joint custody, designating Toni the domiciliary parent, but granted physical custody to Buck for six days out of every two weeks (normally, Friday after school until the following Thursday morning), with intri
 
 *327
 
 cate details for dividing holidays and summer vacation, and other provisions not contested on appeal.
 

 Toni has appealed, raising two assignments of error.
 

 Discussion
 

 By her first assignment of error, Toni urges the district court committed legal error in determining that equal sharing of physical custody was the “starting point” for an award of custody, and this legal error interdicted the fact finding process. The alleged legal error arose during Toni’s closing argument, when the court interrupted counsel and asked:
 

 So tell me, would you not agree that it is the starting point to [the] extent it’s feasible and that it’s in the best interest of the children? That shared custody is the starting point if it’s to the extent it’s feasible and [in] the best interest of the children?
 

 Toni argues that by “shared custody,” the court really meant “equal sharing,” and the jurisprudence is legion that La. R.S. 9:335 A(2)(b) does
 
 not
 
 require “strict equality of time.”
 
 Semmes v. Semmes,
 
 (La.App. 2 Cir. 12/16/09), 27 So.3d 1024;
 
 Luplow v. Luplow,
 
 41,021 (La.App. 2 Cir.2/28/06), 924 So.2d 1135; and numerous other cases. Toni contends that the court’s presumption of “strict equality” was an “incorrect principle of |BIaw,” was prejudicial, and warrants
 
 de novo
 
 review of the record under
 
 Evans v. Lungrin,
 
 97-0541 (La.2/6/98), 708 So.2d 731.
 

 The statute regulating joint custody and implementation orders, R.S. 9:335 A(2)(b), states:
 

 To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
 

 Obviously, the statute says physical custody should be “shared equally” while the court said “shared custody” is the starting point; however, in this minor variation of phraseology we detect no substantial misstatement of the law and absolutely nothing that interdicted the court’s fact finding function. In fact, after a long colloquy with the court, counsel ultimately conceded, “I’d have to be intellectually honest with you, that’s what the law says.” There is no basis to invoke the
 
 de novo
 
 review standard of
 
 Evans v. Lungrin, supra.
 
 This assignment of error lacks merit.
 

 By her second assignment of error, Toni urges the court abused its discretion in determining that sharing physical custody in the manner provided by the judgment was in the best interest of the children, considering all the evidence adduced at trial. In support, she reiterates the trial testimony in great detail and argues that four of the factors of La. C.C. art. 134 strongly support giving her much more custodial time. These are love, affection and emotional ties; stability and continuity of the child’s environment; reasonable preference of the child; and the previous responsibility for the care and rearing of the child exercised by the parties. Extrapolating from the views of Ms. O’Brien, Toni strongly urges that ^Haley’s mental health is at risk unless she gets to stay ■with her mom. She asks this court to reverse the judgment and implement Exhibit D-7.
 

 Buck concedes that Toni has always been the primary caregiver, but argues there was no showing that he ever failed to provide for any of the girls’ needs while he had physical custody. He also argues that, as the court correctly observed, Toni’s animosity toward him probably affected the children more than anything else. He suggests that the 8-6 split is not “strict equality of time” and no abuse of discretion. Finally, he urges that the court is not bound to accept an expert’s
 
 *328
 
 opinion, when the facts support applying the court’s own experience and common sense.
 
 Brewer v. Brewer,
 
 39,647 (La.App. 2 Cir. 3/2/05), 895 So.2d 745. He asks the court to affirm.
 

 The paramount consideration in any child custody case is the best interest of the child. La. C.C. art. 131;
 
 Evans v. Lungrin, supra.
 
 The court is to consider all relevant factors in determining the child’s best interest. La. C.C. art. 134.
 
 [1]
 
 The court is not required to make a mechanical evaluation of the statutory factors but should decide each case on its own 17facts in light of those factors.
 
 Semmes v. Semmes, supra; Bergeron v. Bergeron,
 
 44,210 (La.App. 2 Cir. 3/18/09), 6 So.3d 948. The factors are not exclusive, but are meant as a guide for the court to assess their relative weight and fashion a custody order within its great discretion.
 
 Id.
 

 To the extent feasible and in the best interest of the child, physical custody of the children should be shared equally. La. R.S. 9:335 A(2)(b);
 
 Semmes v. Semmes, supra.
 
 Nevertheless, even when joint custody is in the best interest of the child, the statute does not mandate an equal sharing of physical custody; substantial time, rather than strict equality of time, is the objective of joint custody.
 
 Id.
 
 The trial court’s discretion in fixing custody is great, and a custody award will not be disturbed on appeal in the absence of a clear showing of abuse.
 
 AEB v. JBE,
 
 99-2668 (La.11/30/99), 752 So.2d 756;
 
 Semmes v. Semmes, supra.
 

 The district court’s written ruling on custody and visitation carefully laid out the essential facts. Toni was indeed “disgusted” at Buck’s conduct — the callous announcement that he was leaving her, his denials and the eventual revelation of his affair with Ms. Barrientos. The court perceptively noted that her “understandable animosity toward Mr. Barrios” was her only negative factor under Art. 134. The court also found, with respect to the older child’s emotional problems, “it is difficult to distinguish between the inherent trauma of separation and the trauma by proxy.” This assessment finds support in a complete reading of Ms. O’Brien’s testimony. Notably, we do not find in this expert’s opinion the ominous predictions for Haley’s mental health that have been represented in brief.
 

 |sIn all other respects, this record presents an ideal opportunity for joint custody
 
 *329
 
 with a substantial equality of time to each parent. Toni and Buck live relatively close to one another and agree on the girls’ school and church; both expressed unreserved love and affection for the girls; both have proved their ability to provide for them materially. While Toni has selflessly provided the majority of the daily care for them as infants and toddlers, she admitted Buck has been a regular participant in their school and athletic activities.
 

 Of course, the instant plan will require Buck’s commitment, entailing more involvement with the girls than before and perhaps impinging on his leisure pursuits such as hunting and fishing, trips to Hooters, and romantic interests. If he should fail to comply, resulting in a significant change of circumstances, the plan will be subject to modification under
 
 Bergeron v. Bergeron,
 
 492 So.2d 1193 (La.1986). On this record, however, the court was entitled to award a substantial equality of time.
 

 After full review, we find the district court did not abuse its discretion in awarding joint custody, naming Toni the domiciliary parent, allocating to Buck six days out of every two weeks, and making the other provisions for visitation contained in the judgment. This record falls short of proving manifest error or abuse of discretion. The assigned error lacks merit.
 

 Conclusion
 

 For the reasons expressed, the judgment is affirmed. Costs are to be paid by the appellant, Toni Edwards Barrios.
 

 AFFIRMED.
 

 [1]
 

 . Under Art. 134, "Such factors may include:
 

 "(1) The love, affection, and other emotional ties between each party and the child.
 

 "(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
 

 "(3) The capacity and disposition of each parly to provide the child with food, clothing, medical care, and other material needs.
 

 "(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
 

 "(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
 

 "(6) The moral fitness of each party, insofar as it affects the welfare of the child.
 

 "(7) The mental and physical health of each party.
 

 "(8) The home, school, and community history of the child.
 

 "(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
 

 "(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
 

 "(11) The distance between the respective residences of the parties.
 

 "(12) The responsibility for the care and rearing of the child previously exercised by each party.”