SEXTON, Judge Pro Tem.
hln this custody and child support dispute, the trial judge awarded joint custody of the parties’ six-year-old daughter, Emma. Laura Coleman was designated as the domiciliary parent, with supervised visitation in favor of Ed Coleman. The visitations are to be in the home of Ed’s mother, Molly Coleman, and are to be supervised by either his mother or his sister, Beverly Coleman. Ed was ordered to pay child support in the amount of $879.30 beginning on June 1, 2011. The trial judge further ordered that Ed be allowed to petition the court to lift the supervision restriction when Emma reaches the age of ten years. Laura now appeals and Ed has answered the appeal. For the reasons stated herein, we amend the judgment to start the final child support obligation on June 28, 2011. In all other respects, we affirm.

FACTS

Laura and Ed married in 2004 and divorced in 2009. They had one child, Emma, who was six years old at the time of trial. This was Laura’s third marriage and Ed’s fourth and each of them had major children from prior marriages. Laura currently lives with Emma in Min-den, Louisiana. Ed lives with his mother in Haynesville, Louisiana.
Both Laura and Ed are registered nurses. Laura has been licensed since 1994 and works as a director at a home health care agency. Ed works at Brentwood in Shreveport on the weekends and has his own roofing business during the week. Ed has a 30-year history of alcohol and drug abuse. His criminal record includes eight convictions for DWI-three first offenses, three second offenses and two third of *250 fenses. Ed has four felony 12convictions, including two of the DWIs, one forgery conviction and one for issuing worthless checks. He has been an R.N. since 1998, but has never had an unencumbered license due to his addiction problems. Ed has been in and out of the Recovery Nurse Program (“RNP”) three times and has participated in other rehabilitation programs. Ed has admitted to a $1,500 per day cocaine habit in 2007. Despite Ed’s history as described, Laura and the expert witnesses who testified at the custody hearing agree that Ed loves Emma, desires to be in her life and that a relationship with her father is important to Emma’s development. Significantly, the record indicates that Emma is unaware of her father’s history of alcohol and drug abuse and she enjoys a loving and secure emotional relationship with him.
Laura filed for divorce on June 28, 2009, and sought joint custody, domiciliary status and use of one of the couple’s vehicles. Ed answered the petition and reconvened, seeking co-domiciliary status and equally shared physical custody, exclusive use of a vehicle and interim and permanent spousal support. On August 8, 2009, an interim order issued providing that Emma live with Laura, with visitation with Ed every other weekend and child support in the amount of $200 to be paid by Ed to Laura. The judge appointed Dr. John Simoneaux to evaluate Laura, Ed and Emma. Ed was ordered to provide Laura all records from the RNP and to submit to drug testing as requested by Laura. The record reveals that the parties had difficulty communicating with each other and facilitating civil transfers of physical custody of Emma under the interim order.
|oDr. Simoneaux evaluated the parties and submitted his report on March 27, 2010. Dr. Simoneaux opined that the then-current visitation schedule was “fairly liberal” and recommended supervised visitation. As a result, on April 8, 2010, a status conference was held during which the trial judge verbally ordered that Ed’s visitation be supervised from that point forward and that Ed no longer sleep in the same bed as Emma. Also as a result of Dr. Simoneaux’s report, Laura filed another Rule for Divorce and Incidental Matters on August 12, 2010, seeking sole custody of Emma with only supervised visitation in favor of Ed.
Amidst several delays in setting and resetting the rule, the divorce was granted on November 12, 2010, and holiday visitation was subsequently set by interim order on December 21, 2010. The custody rule was heard on May 25-26, 2011.

THE TESTIMONY AND EVIDENCE

Laura and Ed testified at trial and additional testimony from lay witnesses was accepted by stipulation. Dr. Simoneaux also testified, along with Dr. Richard Williams, an expert in addiction medicine who evaluated Ed for purposes of the custody litigation and testified on Ed’s behalf. In addition, the reports of Drs. Ken Roy and Alan James Klein, psychiatrist and psychologist respectively, were introduced on behalf of Ed. Dr. Roy evaluated Ed in March 2009 in order to make a recommendation for Ed’s eligibility for admission into the RNP. Dr. Klein also evaluated Ed in March 2009 as a component of the process of his attempts to have his nursing license reinstated by the Louisiana Board of Nursing.
LDr. Williams was qualified as an expert in addiction medicine and testified on behalf of Ed. Dr. Williams interviewed only Ed — not Laura or Emma — and, therefore, could not offer a recommendation on custody. Rather, he opined as to Ed’s current condition regarding his addiction and recovery efforts. Dr. Williams testified that *251 Ed is in full remission. He opined that the safeguards of the RNP, including frequent random drug screening, attendance at AA meetings, counseling and work supervision are strong enough to protect Emma while in the physical custody of Ed and that there is no need for supervision of visitation.
As the trial judge noted, Dr. Williams agreed that, as an addict, Ed is always subject to relapse. His mental health evaluation of Ed concurred with the reports of Drs. Simoneaux, Roy and Klein, that Ed exhibits traits of narcissism and antisocial disorder and he is arrogant, defiant and has trouble with authority.
As stated, Dr. Simoneaux was appointed by the judge and evaluated Ed, Laura and Emma. He testified that Ed’s extensive history of abuse renders him very likely to relapse and that Emma is too young to protect herself if Ed relapses while she is in his custody. He found Laura to be exceptionally “normal,” very stable and, in fact, too lenient and giving with Ed. He found Ed to be antisocial and narcissistic and opined that his visitation should be supervised and that Laura has a good argument for requesting sole custody. Dr. Simoneaux agreed that both Laura and Ed are devoted to Emma, but that Ed’s criminal history and addiction pose a threat to Emma’s safety and that the visitations should be supervised by someone |sother than Ed’s mother to ensure that the visits are appropriately monitored. Significantly, Dr. Simoneaux disagreed with Dr. Williams’ assessment that the external safeguards of the RNP are sufficient to ensure Emma’s safety while she is in the physical custody of Ed.
Dr. Simoneaux’s opinion of Emma was remarkable. He found her to be happy, well-adjusted and healthy. Emma revealed no signs of coaching to Dr. Simo-neaux and he found no evidence that either parent had disparaged the other to her.
Dr. Roy evaluated Ed in 2009 after 18 months of sobriety and recommended that he be admitted to the RNP as part of Ed’s effort to have his nursing license reinstated. Dr. Roy noted that Ed had been found to have anti-social traits and a long history of addiction.
Finally, Dr. Klein’s report was básed on a history provided by Ed and psychological testing. His report explained that alcohol dependency is a manifestation of the antisocial traits exhibited by Ed. Testing revealed an “immature, insecure personality structure” and Dr. Klein noted that Ed would likely have problems with authority figures. Further, Ed’s score elevations were found to be consistent with self-indulgent and impulsive behaviors, poor judgment and failure to consider the consequences of his actions. Dr. Klein found Ed to be prone to moodiness and caustic behavior. Dr. Klein concluded that 18 months is- a relatively short period of sobriety and questioned whether Ed could maintain sobriety and not present a public risk (in his nursing practice). Concerned that the personality traits as described above may trigger a relapses, Dr. Klein recommended a longer | ¿period of sobriety before allowing Ed to be directly involved in patient care, possibly a probationary period during which Ed worked in case management or administration.
At the conclusion of the trial, the trial judge took the matter under advisement. Subsequently issued written reasons for judgment provide the following rulings relevant to this appeal:
• Joint custody with Laura as domiciliary parent;
• Ed granted supervised visitation of every other weekend, one-half holidays and one week in each of the summer *252 months, to be supervised by his mother, Molly Coleman;
• Ed to pay child support of $879.30 beginning June 1, 2011;
• Ed may petition the court for change of custody regarding the supervision of visitation when Emma reaches the age of ten without having to establish a change of circumstances;
• Laura will not allow Emma to be around Laura’s adult son, Cody;
• Neither parent will take Emma out of state without two weeks’ prior notice to the other parent and consent of that parent or court order.
This appeal by Laura ensued and Ed has answered the appeal.

DISCUSSION

Reliance on Facts not in Evidence

Before addressing the merits of the appeal, we note that Laura complains throughout her brief and assigns as error that the trial judge improperly relied on facts not in evidence in fashioning her ruling. Specifically, Laura cites the trial judge’s reference to pretrial custody issues which required conference calls and the judge’s participation to resolve, as well as the trial judge’s finding that Ed’s mother is a retired school teacher |7which weighs in favor of her suitability as a supervisor of Ed’s visitation. We are not persuaded that the trial judge’s reference to such facts constitutes reversible error. These facts are borne out by the record before us and our review of the same leaves this court convinced that the trial judge considered all relevant facts peculiar to this case in her effort to effect a workable and safe custodial arrangement for Emma. Specifically, we note that the testimony of Ed’s mother and sister was accepted by stipulation of the parties. Ms. Coleman’s testimony was that she is a retired high school teacher, plays the organ at her church and is well aware of Ed’s history of abuse and also of the loving bond between Ed and Emma. Ed’s sister Beverly’s testimony was that she is a high school teacher, attends church and Sunday school with her brother and sees him on a daily basis. This argument is without merit.

Joint Custody and Supervised Visitation

Four of Laura’s seven assigned errors on appeal challenge the trial judge’s failure to consider the factors in La. C.C. art. 134 and the determination by the trial judge that joint custody with supervised visitation in favor of Ed, to be supervised by his mother, is in the best interest of Emma. Ed has answered the appeal and, in his first assignment of error, requests that his visitation with Emma be unsupervised.
The paramount consideration in any child custody case is the best interest of the child. La. C.C. art. 131; Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731. The court is to consider all relevant factors in | sdetermining the child’s best interest. La. C.C. art. 134.[1] The court is *253 not required to make a mechanical evaluation of the statutory factors, but should decide each case on its own facts in light of those factors. Barrios v. Barrios, 45,295 (La.App.2d Cir.3/3/10), 32 So.3d 324; Semmes v. Semmes, 45,006 (La.App.2d Cir.12/16/09), 27 So.3d 1024. The factors are not exclusive, but are meant as a guide for the court to assess their relative weight and fashion a custody order within its great discretion. Barrios v. Barrios, supra. Furthermore, in Walker v. Walker, 38,982 (La.App.2d Cir.8/18/04), 880 So.2d 956, this court explained:
| flOur jurisprudence is clear and extensive that a trial court is not required to mechanically evaluate the article 134 factors considered in determining the best interest of a child. We take that to mean that a literal articulation of the factors considered is unnecessary when a trial court reaches a conclusion regarding a child’s best interest. Although it would certainly be helpful in reviewing a trial court’s disposition pertaining to a child’s best interest, the trial court’s means of weighing and balancing the article 13^ factors need not be specifically stated.
(Emphasis added.)
Moreover, underlying the trial court’s great discretion in child custody cases is its opportunity to better evaluate the credibility of witnesses. Accordingly, a trial court’s determination in the establishment or modification of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. Mayo v. Henson, 42,250 (La.App.2d Cir.5/9/07), 957 So.2d 318, and cases cited therein.
The trial judge’s written reasons reveal an exhaustive and thorough review of the testimony and psychological reports in this case. The judge’s reasons are replete with references to factual considerations and findings that mimic the factors suggested in article 134. The trial judge closely considered Ed’s addiction and mental state, the parties’ capacity to care for Emma and their ability to provide her a safe and loving environment. We find no legal error in the trial judge’s failure to specifically reference the factors as enumerated in article 134. Such specificity is not required in determining the best interest of the child. Walker v. Walker, supra.
Next, Laura argues that the trial judge manifestly erred in determining that joint custody, rather than sole custody, was in Emma’s best interest. We disagree.
10Under La. C.C. art. 132, Laura’s burden was to prove by clear and convincing evidence that sole custody, as opposed to joint custody, was in the best interest of Emma. In order to prove a matter by clear and convincing evidence, a party must demonstrate that the existence of a disputed fact, in this instance, that sole *254 custody was preferable, is highly probable or much more probable than its nonexistence. White v. Kimrey, 37,408 (La. App.2d Cir.5/14/03), 847 So.2d 157, unit not considered, 03-1943 (La.8/1/03), 849 So.2d 534. We find that Laura failed to show by clear and convincing evidence that sole custody was in Emma’s best interest. While Dr. Simoneaux opined that Laura would have a good argument for sole custody, the trial judge reviewed the history of the parties’ sharing of physical custody, the lack of cooperation on Laura’s part on exchanging physical custody of Emma and her inability to be flexible with the custody arrangements prior to trial. There was no evidence presented that clearly favored sole custody or that tended to show that joint custody would in any way be harmful to Emma or not in her best interest. The trial judge noted that Emma has a loving and healthy relationship with both parents. From her reasons for judgment, it is apparent that the trial judge endeavored to fashion the best arrangement for Emma to continue a close relationship with both parents while ensuring her safety through supervised visits with her father. We find no manifest error in the trial judge’s factual findings and conclusions in this regard.
Laura further submits that the trial judge manifestly erred in allowing overnight supervised visits to be supervised by Ed’s mother. First, we note l„that the judgment provides for the visitation to take place in Ed’s mother’s home, but may be supervised by either Ed’s mother or his sister. We find ample evidence in the record to support the trial judge’s conclusion that, on the particular facts of this case and the options available to the court, it is in Emma’s best interest that her visits extend overnight and be supervised by one of the woman who are most familiar with Ed and Emma and have persuaded the court that they are appropriate persons to ensure Emma’s safety. Emma has enjoyed overnight visitation with her father without incident prior to trial, and Ed’s mother has supervised those visits. Again, the record contains no evidence to suggest that this arrangement is not in Emma’s best interest.
As previously stated, in his answer to the appeal, Ed argues that the trial court erred in imposing the supervision requirement on his visitation with Emma. He submits that there is no evidence in the record that suggests that he poses a threat the child. We are not persuaded by Ed’s argument.
The trial judge concluded that, because of Emma’s tender age, the external safeguards of the RNP are not enough to ensure her safety with Ed. There is no dispute regarding Ed’s history of alcohol and drag abuse. There is no dispute that he exhibits traits of personality disorders which may affect his behavior with Emma. There is no dispute that Ed, or any addict, may relapse at any given time. The experts disagreed on whether the safeguards of the RNP were sufficient to ensure Emma’s safety while in Ed’s physical custody. The trial judge weighed those opinions and concluded that six-year-old Emma’s best interest would be served by having her visits | ^supervised until she is of the age that she is more able to protect herself in the event that her father relapsed while she is in his custody. We find no manifest error in that conclusion.
In summary, the trial judge, in her discretion, found that sole custody in favor of Laura was not in Emma’s best interest; rather, joint custody with supervised visitation sufficiently addressed Laura’s valid and justified concern for Emma’s safety. This conclusion is well supported by this record and is within the vast discretion of the trial judge.

*255
No Contact with Laura’s Adult Son Permission to Travel out of State

In her fourth assignment of error, Laura challenges the trial judge’s rulings that Laura’s adult son, Cody, may not be around Emma and that each parent must provide notice to the other parent of the intent to take Emma out of state. The traveling parent must also obtain the consent of the other parent or the permission of the court before leaving the state with the child.
Cody is the adult son of Laura from a prior marriage. It is undisputed that Cody abuses drugs and alcohol and refuses rehabilitation. Cody also has a criminal history, including one incident where he held a gun to someone’s head. In addition, his probation was revoked due to cocaine abuse. No evidence was presented that Cody is not presently abusing drugs and/or alcohol. Drs. Simoneaux and Williams both expressed concern over Cody being allowed around Emma. Dr. Simoneaux opined that, without serious intervention, one can “bank on” the fact that this type of individual | iswill commit another act of violence. We find no manifest error in the trial judge’s order that Emma not be in the presence of this influence.
Likewise, we find no manifest error in the trial judge’s determination that each parent should give the other notice of that parent’s intent to travel out of state with Emma. The requirement that Ed and Laura obtain the other parent’s consent or the permission of the court to make such a trip is a reasonable condition to be placed on parents who have exhibited difficulties in cooperating with each other concerning physical custody of the child.

Retroactivity of Child Support

Laura also assigns as error the trial judge’s failure to begin the award of final child support on the date of judicial demand, which was June 23, 2009. The final judgment awarding child support in the amount of $879.30[2] payable by Ed to Laura was signed on June 28, 2011. As previously stated, the trial judge ordered the child support to begin June 1, 2011. Laura mistakenly argues that La. R.S. 9:310 controls and provides that child support be made retroactive to the date of judicial demand, absent a showing of good cause why it should not be made retroactive. The retroactivity of child support awards, however, is currently governed by La. R.S. 9:315.21, Retroactivity of child support judgment, which provides:
A. Except for good cause shown, a judgment awarding, modifying, or revoking an interim child support allowance shall be retroactive to the date of judicial demand, but in no case prior to the date of judicial demand.
| mB. (1) A judgment that initially awards or denies final child support is effective as of the date the judgment is signed and terminates an interim child support allowance as of that date.
(2) If an interim child support allowance award is not in effect on the date of the judgment awarding final child support, the judgment shall be retroactive to the date of judicial demand, except for good cause shown, but in no case prior to the date of judicial demand.
C. Except for good cause shown, a judgment modifying or revoking a final child support judgment shall be retroactive to the date of judicial demand, but in no case prior to the date of judicial demand.
*256 D. Child support of any kind, except that paid pursuant to an interim child support allowance award, provided by the judgment debtor from the date of judicial demand to the date the support judgment is signed, to or on behalf of the child for whom support is ordered, shall be credited to the judgment debtor against the amount of the judgment.
E. In the event that the court finds good cause for not making the award retroactive to the date of judicial demand, the court may fix the date on which the award shall commence, but in no case shall this date be a date prior to the date of judicial demand.
Here, there was an interim order of child support in effect when the final judgment awarding child support was signed. Section B(l) of the statute provides, therefore, that the final award of child support begin on June 28, 2011 — the date the judgment was signed — and the interim award terminated on that date. Upon a showing of good cause, however, a trial court may order a final child support award retroactive to the date of judicial demand, even though there has been an interim award in effect. Vaccari v. Vaccari, 10-2016 (La.12/10/10), 50 So.3d 139. On the record before us, we find no showing of good cause why the final award of child support should be made retroactive to June 23, 2009. There was an interim award in place of $200 |1sper month, which Ed voluntarily increased to $600 per month. Laura reported to Dr. Simoneaux that she was unconcerned with the amount of child support. Absent a showing of good cause, the statute requires the award of final child support to begin on the date of the signing of the judgment, thus terminating the interim award. We amend the judgment to reflect that the final child support award shall begin on June 28, 2011.

Future Lifting of Supervision Restriction

Finally, Laura asserts that the trial judge was without authority to order that Ed may petition the court to change custody when Emma reaches the age of ten years without having to show a change in circumstances as would otherwise be required under Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). This argument lacks merit.
A modification of visitation rights is not so substantial as a change in actual physical custody. Adams v. Adams, 39,-424 (La.App.2d Cir.4/6/05), 899 So.2d 726, citing Acklin v. Acklin, 29,193 (La.App.2d Cir.2/26/97), 690 So.2d 869. As such, the higher burden of Bergeron does not apply and a showing that the modification is in the best interest of a child is sufficient. Adams v. Adams, supra. In the case sub judice, Ed may petition the court at any time to have the supervision restriction lifted and the trial court retains jurisdiction to so lift the restriction on a showing that it is in Emma’s best interest to do so.

\mED’S ANSWER TO THE APPEAL

Ed assigns two errors in his answer to the appeal. The first assignment was addressed above and concerned his challenge to the restriction that his visitation with Emma be supervised.
In his second assignment of error, Ed requests additional summer visitation with Emma. The trial judge awarded Ed three weeks out of the summer and he is requesting two additional weeks, so that he would have the first two weeks of June, the first two weeks of July and the first week of August with Emma. The judgment also provides, however, that the alternating weekend visitation schedule shall continue in effect during the summer months, which means that Ed will enjoy liberal summer visitation of three weeks in *257 addition to his weekend visitations. Accordingly, we find no manifest error in the trial judge’s summer visitation award.

DECREE

For the foregoing reasons, the judgment of the trial court is amended to begin the award of child support on the date of the signing of the judgment, June 28, 2011. In all other respects, the judgment is affirmed. Costs of appeal are assessed to Laura Mathys Coleman.
AMENDED AND, AS AMENDED, AFFIRMED.

. La. C.C. art. 134 enumerates the relevant factors that a trial court shall consider in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
*253 (5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.

. In his brief, Ed asserts an error in calculation of the amount of child support. We have reviewed the mathematical calculations and find no error.