JUDE G. GRAVOIS, Judge.
Un this domestic matter, both parties, former spouses Susan Folse McClanahan (“Ms. Folse”) and Jack McClanahan (“Mr. McClanahan”), have appealed the trial court’s judgment ordering Mr. McClana-han to pay Ms. Folse child support in the amount of $4,350.00 per month and final periodic spousal support in the amount of $2,275.00 per month. The judgment was rendered on June 20, 2007, but was made retroactive to March 28, 2003. Both parties timely filed motions for a new trial, which were not ruled upon until May 28, 2013. Ms. Folse’s motion for a new trial was granted in part (ordering Mr. McCla-nahan to pay Ms. Folse’s medical costs and prescription medication costs not covered by insurance, in addition to the monthly final periodic spousal support payment and the costs of her medical insurance); otherwise, both motions for a new trial were denied. These timely appeals followed.
After thorough review of the extensive record of this proceeding, for the following reasons, we find that the trial court’s award of child support is not an abuse of discretion, as it is clearly supported by the evidence, and is therefore |saffirmed. We further find that the trial court did not err in finding that Ms. Folse is entitled to final periodic spousal support, and that the amount awarded is not an abuse of discretion, as it is clearly supported by the evidence, and is therefore affirmed. However, we find that the trial court erred in making these awards retroactive, and thus amend the judgment to make the awards effective as of June 20, 2007, the date the judgment was rendered and signed. As amended, we affirm.

FACTS

This case has a very long and contentious history. The parties were married on January 23, 1988. Their daughter, *590 Elizabeth, was born on June 1, 1989. Ms. Folse filed for divorce on March 25, 1998. A judgment of divorce was rendered on January 21,1999.
On April 30, 1998, shortly after Ms. Folse filed for divorce, by letter executed by their counsel, the parties entered into an “interim agreement” regarding interim child support, temporary spousal support, and other expenses.[1] The “interim agreement,” which was not entered as a judgment of the court, stated that it would “remain in place until we either reach an agreement or have the matter determined by the court.” On February 4, 1999, Mr. McClanahan filed a motion to establish permanent child support and determine Ms. Folse’s entitlement to permanent alimony (now known as final periodic spousal support). The parties agreed, however, to litigate their community property partition proceeding prior to litigating their support issues.
The parties’ community property partition proceeding was duly litigated and a judgment was rendered therein on March 5, 2002. That judgment was appealed |4to this Court, which affirmed, in part, reversed in part, amended in part, and rendered. See McClanahan v. McClanahan, 03-1178 (La.App. 5 Cir. 2/3/04), 868 So.2d 844 (on rehearing), writs denied, 04-1175 (La.9/3/04), 882 So.2d 609.[2]
In the meantime, after the community property partition judgment was rendered, but prior to the finality of the appeal thereon, trial on the support issues was conducted over the course of several days in 2002 and 2003.[3] Post-trial briefs were filed on September 5, 2003, after which the matter was submitted for judgment and taken under advisement. Judgment was not rendered until June 20, 2007. The judgment ordered Mr. McClanahan to pay Ms. Folse $4,350.00 per month in child support, plus the continued direct payment of Elizabeth’s school tuition and the costs of any of Elizabeth’s uncovered health and dental expenses. The judgment also ordered Mr. McClanahan to pay final periodic spousal support to Ms. Folse in the amount of $2,275.00 per month, plus the costs of her health insurance. Both awards were made retroactive to March 28, 2003.
Both parties timely filed motions for a new trial. On May 28, 2013, the trial court *591 ruled on the motions for a new trial, denying Ms. Folse’s motion for a new trial in part regarding the amounts awarded for child support, granting Ms. Folse’s motion for a new trial in part regarding final periodic spousal support (ordering Mr. McClanahan to additionally pay Ms. Folse’s medical costs and prescription medication costs not covered by insurance), and denying both parties motion for a [Bnew trial regarding the issue of the effective date and/or retroactivity of. the awards. Both parties thereafter timely filed motions for appeal.
On appeal, Mr. McClanahan argues that given his W-2 salary of $60,000.00 per year, the trial court erred in setting the amount of child support due Ms. Folse, and accordingly, said amount should be reduced. Regarding the final periodic spousal support award, Mr. McClanahan argues that Ms. Folse is not entitled to final periodic spousal support, and accordingly, the award therefor should be reversed. Alternatively, he argues that the amount of final periodic spousal support awarded should be reduced significantly, again given his W-2 salary. He also seeks reimbursement from Ms. Folse for the difference between the spousal support he paid to her under the “interim agreement” and the amount awarded in the June 20, 2007 judgment, which was made retroactive to March 28, 2003.
Ms. Folse argues on appeal that the award of child support was appropriate under the particular facts and circumstances of this case and should not be modified. She also contends that the award of final periodic spousal support should be increased, not reduced, and further that the trial court erred in making March 28, 2003 the effective date of support awards, instead of June 20, 2007, the date the judgment was rendered and signed.

ANALYSIS

An appellate court may not set aside a trial court’s findings of fact in absence of manifest error or unless it is clearly wrong. Stobart v. State through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). Regarding legal issues, the appellate court gives no special weight to the findings of the trial court, but instead reviews the judgment to determine if it is legally correct or incorrect. Questions of law, therefore, are reviewed by appellate courts | ⅜⅛ Louisiana under the de novo standard. Wooley v. Lucksinger, 06-1140 (La.App. 1 Cir. 12/30/08), 14 So.3d 311, 335.

Child support

A child support award is entitled to great weight and will not be disturbed on appeal absent an abuse of discretion. Dufresne v. Dufresne, 10-963 (La.App. 5 Cir. 5/10/11), 65 So.3d 749, 754; Rutland v. Rutland, 13-70 (La.App. 5 Cir. 07/30/13), 121 So.3d 776, 781. Under La. C.C. art. 227, a parent owes an obligation to support, maintain, and educate his -or her children; this obligation is a matter of public policy, and the court is to fix the amount of support after considering the needs of the child, as well as the means available to the parent obligated to pay it. Singletary v. James, 02-1074 (La.App. 3 Cir. 2/5/2003), 838 So.2d 115.[4]
Mr. McClanahan argues on appeal that the trial court erred in not applying the guidelines found in La. R.S. 9:315 et seq., *592 in order to determine the parties’ respective child support obligations. He argues that the trial court erred in finding that he would be able to “generate any income that is needed for the support of his minor child, Elizabeth, and for any other expenses he is ordered to pay,” because his income consisted only of his W-2 salary of $60,000.00 per. year from International Rental Tools, L.L.C. (“IRT”), one of his closely-held companies.[5] He argues that the bank that held his companies’ loans required that his salary be so restricted, and that he was forced to liquidate assets in order to pay the “exorbitant” interim support amounts. He argues that the trial court erroneously considered those liquidated assets and other numerous assets as income, contrary to applicable |7law, and that his businesses were in fact losing money. Mr. McClanahan argues, therefore, that given the meager amount of his salary, the guidelines require that his child support obligation should have been set at $652.00 per month, and that his share of other expenses (such as tuition and health insurance, which he was paying in full under the “interim agreement”) should be set at 77%, the relative comparison between his and Ms. Folse’s income.
At the time the matter was heard, La. R.S. 9:315(C)(4) set forth the definition of “gross income” for purposes of child support awards as follows:
(4) “Gross income” means:
(a)The income from any source, including but not limited to salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, worker’s compensation benefits, unemployment insurance benefits, disability insurance benefits, and spousal support received from a preexisting spousal support obligation;
(b) Expense reimbursement or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business, if the reimbursements or payments are significant and reduce the parent’s personal living expenses. Such payments include but are not limited to a company car, free housing, or reimbursed meals; and
(c) Gross receipts minus ordinary and necessary expenses required to produce income, for purposes of income from self-employment, rent, royalties, proprietorship of a business, or joint ownership or a partnership or closely held corporation. “Ordinary and necessary expenses” shall not include amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses or investment tax credits or any other business expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support.
(d) As used herein, “gross income” does not include:
• (i) Child support received, or benefits received from public assistance programs, including Family Independence Temporary Assistance *593 Plan, supplemental security income, food stamps, and general assistance.
| s(ii) Per diem allowances which are not subject to federal income taxation under the provisions of the Internal Revenue Code.
(iii) Extraordinary overtime or income attributed to seasonal work regardless of its percentage of gross income when, in the court’s discretion, the inclusion thereof would be inequitable to a party.
Louisiana Revised Statute 9:315.13,[6] which allows the courts to depart from the child support guidelines when the parties’ combined income exceeds the scheduled amounts, provides:
B. If the combined adjusted gross income of the parties exceeds the highest level specified in the schedule contained in R.S. 9:315.19,[7] the court:
(1) Shall use its discretion in setting the amount of the basic child support obligation in accordance with the best interest of the child and the circumstances of each parent as provided in Civil Code Article 141, but in no event shall it be less than the highest amount set forth in the schedule....
The guidelines in effect at the time this matter was filed had a maximum combined adjusted monthly gross income of $10,000.00. At the time trial began in this matter in 2002, the guidelines had increased to a combined adjusted monthly gross income of $30,000.00. Having reviewed all of the testimony and evidence in this case and the appellate record of the community property partition proceeding, which was included as an exhibit in this appellate record, we find no abuse of the trial court’s discretion in finding that Mr. McClanahan had an income that, when combined with the income attributed to Ms. Folse, placed them well beyond the monetary limits of the child support guidelines as they existed at that time. That the trial court was unable to place an exact figure on Mr. McClanahan’s income was due in large part to the opacity of the complicated transactions among his various companies and himself, and the inadequate documentation thereof, as well |9as the fact that it appears, even as trial was in progress, Mr. McClanahan had not provided the court with complete and updated financial information.
It is well settled that the district court’s conclusions of fact regarding financial matters underlying an award of child support will not be disturbed in the absence of manifest error. McCorvey v. McCorvey, 05-889 (La.App. 3 Cir. 2/01/06), 922 So.2d 694, 702. In a case with many parallels to this one, the McCorvey court was confronted with a self-employed obli-gor spouse who, the evidence showed, consistently underreported and/or misrepresented his income, in addition to failing to provide discovery regarding his income. In affirming the district court’s child support award in the face of Mr. McCorvey’s claims that he had inadequate income, the court stated:
In Verges v. Verges, 01-208 (La.App. 1 Cir. 3/28/02), 815 So.2d 356, vorit denied, 02-1528 (La.9/20/02), 825 So.2d 1179, the appellate court affirmed that Mr. Verges had an income of at least $ 30,000.00 per month, even though one of his annual tax returns showed his total income as a loss of $ 6,080.00. There, after considering all of the testimony and documenta *594 ry evidence, the trial court rejected Mr. Verges’ income tax returns as not setting forth his true income, and found that many of the expenses reflected therein were inaccurate or inapplicable for purposes of determining his obligation to pay child support. The appellate court in Verges articulated as follows:
One cannot avoid all or part of his child support obligation by exercising exclusive control over a corporation wholly owned by him in order to limit his own salary. Hudnall v. Hudnall, 2000-0330, p. 5 (La.App. 1st Cir.5/11/01), 808 So.2d 641, 644-45.
As the trial court so eloquently stated in Hudnall:
Parents are obligated to contribute to the support of their children and they must contribute in light of the child’s needs as well as the circumstances of the parents. Child support is a primary obligation. Therefore, the Court will not allow a person to shield their income in order to diminish their liability owed to a child. It is the parties [sic] obligation to be honest and forthcoming regarding the establishment of his or her legitimate income and any diminutions to that income.
Hudnall, 2000-0330 at p. 5, 808 So.2d at 644-45.
ImBecause the evidence showed, and the trial court found, that Mr. Verges’ ,tax returns were erroneous and self-serving, in that the income shown was based on recapitulated figures and amounts submitted by Mr. Verges (or his office manager) to his accountant who accepted them without question, and was at odds with the other testimony and evidence elicited, the trial court correctly rejected Mr. Verges’ contention that these accurately set forth his available income. Here, the trial court rejected Mr. Verges’ testimony and concluded he had failed to disclose the true nature of his income. In doing so, the trial court obviously accepted the testimony of Mr. Verges’ witness, Dwayne Harper, the vice-president of commercial lending at Cottonport Bank, and other documents and testimony introduced at trial, and rejected Mr. Verges’ testimony concerning the figures shown on his tax returns.
Verges, 815 So.2d at 363.
McCorvey, 922 So.2d at 701-702.
The extensive record in this case shows no abuse of discretion in the trial court’s ruling that Mr. McClanahan had ample income to pay the support judgment rendered. While Mr. McClanahan may have only reported a salary of $60,000.00 per year on his personal tax returns, his companies made liberal disbursements to him far in excess of this amount, as shown by his personal checking account statements and other records.[8] These transactions were characterized inconsistently in related documents such as the companies’ tax returns, Mr. McClanahan’s personal tax returns, the companies’ general ledgers, and the checking account records of the companies and Mr. McClanahan, casting doubt on the veracity of his claims regarding his income and his alleged need to liquidate assets to meet his financial obligations. Ms. Folse’s expert, Harold Ash-er, testified that, for example, transactions Mr. McClanahan claimed were the liqui *595 dation of assets, both personal and various company assets, were not reported as such on relevant tax returns or borne out by internal company financial documents. While Mr. McClanahan disagreed with Mr. Asher’s interpretations of the financial documents, neither hej^nor his accountant, Mr. Jude Heath, rebutted Mr. Asher’s conclusions with any evidence other than opinion or undocumented recollections about the transactions. Nor is there any evidence that such transactions were made for the specific purpose of paying his support obligations except for Mr. McClana-han’s self-serving testimony.[9]
Furthermore, evidence and testimony showed that Mr. McClanahan enjoyed a rather luxurious lifestyle seemingly not possible on an annual income of only $60,000.00, much less considering the interim child and spousal support he was paying to Ms. Folse, with documented travel, luxury vacations, personal investments, purchases, and sales of real estate. Courts may consider evidence of the standard' of living of the obligor when the actual income he claims is inconsistent with his lifestyle. See Sawyer v. Sawyer, 35,583 (La.App. 2 Cir. 11/02/01), 799 So.2d 1226, 1332 (obligor went on luxury vacations, used private jets, owed an extravagant home, expensive vehicles, a pool house, and a boat — items certainly indiea-five of greater income than what was reported on the W-2 forms.).
We further find no abuse of discretion in the amount awarded as child support, $4,350.00 per month, as well as the listed expenses (such as tuition, health insurance, and uncovered medical expenses). As the amount of child support is tied to the obligor parent’s ability to pay, coupled with the lifestyle the child enjoyed during the marriage, the evidence fully supports this amount. Furthermore, the fact that this amount is very close to the amount Mr. McClanahan agreed to pay, and did in fact pay, under the “interim agreement” between the |12parties further evidences that this final award of child support was not an abuse of discretion. Having reviewed all of the evidence and testimony, and considering the applicable law, we find no abuse of the trial court’s discretion in setting the amount of the child support award, and thus affirm the award.[10]

Final periodic spousal support

Louisiana Civil Code article 112(A) provides that when a spouse has not been at fault prior to the filing of a petition for divorce and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support in accordance with Paragraph C of that article.[11] The standard of review for *596 determining the amount of spousal support is one of abuse of discretion. Thibodeaux v. Thibodeaux, 95-671 (La.App. 5 Cir. 1/30/96), 668 So.2d 1269, 1272, unit, not considered, 96-0549 (La.4/19/96), 671 So.2d 930. The trial court is vested with great discretion in making post-divorce spousal support determinations and its judgment as to whether the spouse has insufficient means for support will not be disturbed absent a manifest abuse of discretion. Ward v. Ward, 04-803 (La.App. 5 Cir. 1/25/05), 894 So.2d 499, 502. Nevertheless, the spouse claiming final periodic spousal support has the burden of proving necessitous circumstances or insufficient means for his or her maintenance. Id. See also Smith v. Smith, 08-575 (La.App. 5 Cir. 01/12/10), 31 So.3d 453, 460.
Regarding final periodic spousal support, Mr. McClanahan argues that Ms. Folse is fully capable of working full time to support herself and merely chooses not to do so, despite contrary medical evidence provided by her. He claims that j1sshe is no longer caring for a minor child, since Elizabeth reached the age of majority in 2007. Thus, he argues, especially considering his W-2 salary of only $60,000.00 per year, his final periodic spousal support obligation should be eliminated in its entirety or greatly reduced, as it exceeds one-third of his income.
As shown in the reasons for its June 20, 2007 judgment, the trial court attributed an income of $1,053.65 per month to Ms. Folse, based upon her working 17.5 hours per week for 50 weeks per year at a rate of $17.00 per hour, less 15% for taxes, for a total net annual income of $12,643.75. The June 20, 2007 judgment ordered Mr. McClanahan to pay Ms. Folse $2,275.00 per month in final periodic spousal support, plus the costs of her' health insurance, and (after the partial grant of Ms. Folse’s motion for a new trial) her uncovered medical and prescription medication costs. The trial court accepted Ms. Folse’s medical evidence that she could not work a normal day or a full time job.[12]
The parties stipulated that Ms. Folse was free from fault in the breakup of the marriage. The evidence in the record shows that Ms. Folse never worked full time while the parties were married. She completed high school, had continuing education of approximately one year after-wards at. a business college, but earned no college degree. She worked part time for a cosmetics company prior to Elizabeth’s birth, and returned to work part time in the same field while Elizabeth was a baby in 1989. Several months later,. she and Mr. McClanahan agreed that she would stop working. She did not work again until after she filed for divorce in 1998, and then again only part time, in the same field. Ms. Folse submitted medical evidence regarding her chronic health conditions, a systemic lupus disease with attendant complications that will affect her for life, and why it made it difficult if not impossible for her to work full time. This evidence was unrebutted. 114Upon review, we find no . abuse of discretion in the trial court’s finding that Ms. Folse is entitled to final periodic spousal support, as she was free from fault in the breakup of the marriage and her income is inadequate for her maintenance.
Both parties appeal the amount of final periodic spousal support that was awarded to Ms. Folse. Mr. McClanahan argues that the award should be reduced, citing his meager income and her failure to *597 work full time and support herself, which arguments were discussed and rejected above. Ms. Folse argues that her expenses exceed the combined amount of her income and the final periodic spousal support award, and that the trial court erred in reducing her monthly support due from Mr. McClanahan by the amount of her income.
Louisiana Civil Code article 112(C)[13] provides:
C. The court shall consider all relevant factors in determining the amount and duration of final support, including:
(1) The income and means of the parties, including the liquidity of such means.
(2) The financial obligations of the parties, including any interim allowance or final child support obligation.
(3) The earning capacity of the parties.
(4) The effect of custody of children upon a party’s earning capacity.
(5) The time necessary for the claimant to acquire appropriate education, training, or employment.
(6) .The health and age of the parties.
(7) The duration of the marriage.
(8) The tax consequences to either or both parties.
(9) The existence, effect, and duration of any act of domestic abuse committed by the other spouse upon the claimant, regardless of whether the other spouse was prosecuted for the act of domestic violence.
l1BIn making a determination of final periodic spousal support, a court considers the expenses required to procure the basic necessities of life, such as food, shelter, and clothing, and also included in the determination are reasonable and necessary automobile expenses, medical and drug expenses, utilities, and household expenses. Thus, maintenance is broader than merely food, shelter, and clothing. Thibodeaux v. Thibodeaux, supra, 668 So.2d at 1270. However, final periodic spousal support is limited to an amount sufficient for maintenance, rather than the continuation of an accustomed lifestyle. Dufresne v. Dufresne, 08-215 (La.App. 5 Cir. 9/16/08), 992 So.2d 579, rehearing denied, writ denied, 08-2843 (La.12/17/08), 996 So.2d 1123.
Upon review, we find that the record as a whole clearly shows that the trial court’s award of final periodic spousal support was within the trial court’s broad discretion. Ms. Folse presented evidence regarding her income and her expenses, and argued that her expenses exceeded her combined income and interim spousal support. She testified that she had inherited some money and property from her mother, some of which had gone to fund the ongoing litigation between her and Mr. McClanahan. This Court also notes that she received a house and other assets in the community property partition. Following the partial grant of Ms. Folse’s motion for a new trial, the final periodic spousal award was amended to include her uncovered medical and prescription medication costs, which, considering her chronic serious health conditions, may not be insubstantial. Viewing the record as a whole, we find no abuse of the trial court’s broad discretion in calculating this award.

Retroactivity of judgment

In its June 20, 2007 judgment, the trial court ordered that the support *598 awards be made “retroactive to March 28, 2003.” In its reasons for judgment dated that lósame day, the trial court did not expound on its basis for- making the support awards retroactive. In her motion for a new trial, Ms. Folse argued that the trial court should have made the support awards effective pn June 20, 2007, the date the judgment granting the support awards was rendered and signed. In his motion for a new trial, Mr. McClanahan argued that the trial court should have made the support awards effective on February 4, 1999, the date he filed to establish permanent child support and Ms. Folse’s entitlement to permanent support. In its May 28, 2013 judgment on the parties’ motions for a new trial, the trial court denied the parties’ motions for a new trial on this issue, and provided the following bases therefor in its reasons for judgment .dated that same day, to-wit:
With regard to the effective date and/or retroactivity of the awards of support, the Court has reviewed the provisions of La. R.S. 9:315.21(B)(2), Vaccari v. Vaccari, 50 So.3d 139 (La.2010) and La. R.S. 9:321(B)(2) in consideration of Jack McClanahan’s position that the awards should be retroactive to the date of filing. The Court has also reviewed the provisions of La. R.S. 9:315.21(B)(1) and La. R.S.9:321(B)(1) in consideration of Susan McClanahan’s position that “the interim spousal support agreement” terminated on the date of the Judgment awarding final periodic spousal support, and that the support award should be effective as of that date. The Court finds that although the parties entered into an interim agreement on the issues of support, it was a, letter agreement between the parties which they did not make a judgment of the court. The Court further finds that there exist [sic] “good cause” for the support awards not to be made retroactive to the date of filing. Our view of this record clearly indicates the number of times the matter was continued by one party or the other without objection due to extensive on going discovery of Mr. McClanahan’s financial and business records, including Motions to Compel. The Court also firmly believes that at the end of the day of March 28, 2003 on which the matter was partially heard and had to be continued to another date for the taking of further evidence and testimony, counsel for the parties agreed at the bench that March 28, 2003 would be the effective date. Whether or not counsel for the parties agree that those representations were made to the Court, the Court finds as stated previously that based upon the numerous continuances and the Motions to Compel, March 28, 2003 is the appropriate effective date of the support awards.
As can be seen, in its reasons for judgment, although the trial court mentioned that it remembered the parties reaching an off-the-record agreement to 117use March 28, 2003 as the effective date of the support awards, it is evident that trial court based its retroactivity ruling not on an agreement or stipulation of the parties, but rather on its finding that the parties’ “interim agreement” pertaining to support had not been made a judgment of the court. As such, the court determined that paragraphs (B)(2) of La. R.S. 9:315.21 and 9:321 were applicable to the case (rather than paragraphs (B)(1) of said statutes).
Louisiana Revised Statute 9:315.21(B) provides:
(1) A judgment that initially awards or denies final child support is effective as of the date the judgment is signed and terminates an interim child support allowance as of that date.
*599 (2) If an interim child support allowance award is not in effect on the date of the judgment awarding final child support, the judgment shall be retroactive to the date of judicial demand, except for good cause shown, but in no case prior to the date of judicial demand.
Louisiana Revised Statute 9:321(B) provides:
(1) A judgment that initially awards or denies final spousal support is effective as of the date the judgment is rendered and terminates an interim spousal support allowance as of that date.
(2) If an interim spousal support allowance award is not in effect on the date of the judgment awarding final spousal support, the judgment shall be retroactive to the date of judicial demand, except for good cause shown.
As can be seen, under paragraphs (B)(2) of said statutes (where interim child support and spousal support allowance awards are not in effect on the date of the judgment |isawarding such support), the “default” effective date of the final support awards is retroactive to the date of judicial demand, which in this case would be February 4, 1999, the date Mr. McClanahan filed his rule to establish permanent child support and determine Ms. Folse’s entitlement to permanent support. In comparison, under paragraphs (B)(1) of said statutes (where interim child support and spousal support allowance awards are in effect on the date of the judgment awarding such support), the “default” effective date of the final support awards is the date the judgment is rendered, which in this case would be January 20, 2007.
Ms. Folse argues on appeal that the trial court should have made the support awards effective as of June 20, 2007, the date the judgment was rendered and signed, as per La. R.S. 9:315.21(B)(1), with respect to final child support, and La. R.S. 9:321(B)(1), with respect to final periodic spousal support. Mr. McClanahan did not appeal the trial court’s ruling on this issue and argues in response to Ms. Folse’s appeal that the trial court “was correct in its holding” on this issue.
Upon review, for the following reasons, we find that the trial court committed legal error in its determination of the effective date of the support awards.
First, we find that the trial court committed legal error in not giving full legal effect to the terms of the parties’ “interim agreement” on support, and in determining that paragraphs (B)(2) of La. R.S. 9:315.21 and 9:321 were applicable to the support awards in this case (rather than paragraphs (B)(1) of said statutes), because the “interim agreement” was not made a “judgment” of the court. The “interim agreement” provides that it would “remain in place until we either reach an agreement or have the matter determined by the court.” Upon review, we find that the “interim agreement” had the effect of a compromise between the parties, which is an enforceable contract. See La. C.C. arts. 3071 and 3078. The parties never altered the support amounts and abided by the other terms of the “interim agreement” until the judgment in question was rendered on January 20, 2007.[14] *600 |13Notably, both statutes at issue use the word interim support “allowance,” rather than interim support “judgment.” By its plain language, the “interim agreement” clearly provided for interim support “allowances” that were in place at the time the judgment granting the final support awards was rendered. Accordingly, the trial court committed legal error in concluding that no interim support allowances were in place at the time the judgment granting the final support awards was rendered, and thus erred as a matter of law in determining that paragraphs (B)(2) of La. R.S. 9:315.21 and 9:321 were applicable to the support awards in this case (rather than paragraphs (B)(1) of said statutes).
This error of law had significant consequences. Under paragraphs (B)(2) of said statutes, the “default” effective date of the final support awards is retroactive to the date of the filing of the rule, which occurred in 1999, rather than the date of judgment under paragraphs (B)(1) of said statutes. In finding “good cause” to avoid making the effective date of the support awards retroactive to 1999, the trial court cited the delays in bringing the matter to trial caused in large part by Mr. McClana-han’s numerous instances of failure to comply with discovery. Had paragraphs (B)(2) of said statutes applied to this ease, the trial court’s ruling would seemingly have appropriately penalized Mr. McCla-nahan for these alleged misdeeds. However, because we find that these awards fall under paragraphs (B)(1) of said statutes, the trial court’s “good cause” to deviate from the “default” effective date of the support awards actually penalizes Ms. Folse, a result the trial court clearly did not intend.
|2oWe further find that Vaccari v. Vaccan, 10-2016 (La.12/10/10), 50 So.3d 139, cited by the trial court in its reasons for judgment, is inapplicable in this case. In Vaccari, the Supreme Court held that upon a showing of “good cause,” a trial court may order a final child support award be made retroactive to the date of judicial demand, rather than the effective on the date of the judgment, even though an interim allowance award was in effect in that case. In other words, the Supreme Court added a “good cause” provision to La. R.S. 9:315.21(B)(1), the same as is contained in paragraph (B)(2) of said statute, for allowing a court to depart from the “default” effective date of the judgment awarding child support. In Vaccari, the court entered an interim support judgment that was later discovered to be based on inaccurate financial information from Mr. Vaccari that knowingly and grossly un-derreported his income. The trial court found that Mr. Vaccari had thereby violated his child support obligations under La. C.C. art. 227, and thus found it proper to *601 make the final child support award retroactive to the date of judicial demand so that he would not benefit from his own misdeeds. In the instant case, the parties agreed to the terms of the “interim agreement” without reference to any specific income information of the parties; no fraud or misdeeds are alleged to have been committed in the confection of the “interim agreement.” Thus, Vaccari is inapplicable here.
Further, regarding final periodic spousal support, in Maggio v. Maggio, 07-983 (La.App. 5 Cir. 03/25/08), 981 So.2d 55, 59, this Court found no statutory provision giving the trial court discretion to make a final spousal support award retroactive where interim support was being paid at the time the final support judgment was rendered. La. R.S. 9:321(B)(1) very clearly provides that in such a case, the final spousal support judgment is effective as of the date of the judgment.
1 ⅞1 Accordingly, we hereby amend the trial court’s June 20, 2007 judgment removing the “retroactive” effective date of final support awards, thereby making June 20, 2007 the effective date of the final support awards.

CONCLUSION

For the foregoing reasons, we affirm the trial court’s ruling that Ms. Folse is entitled to final periodic spousal support, affirm the trial court’s awards of final child support and final periodic spousal support, and amend the judgment to make June 20, 2007 the effective date of the final support awards. As amended, we affirm.

AFFIRMED AS AMENDED.

. In particular, in the “interim agreement,” Mr. McClanahan agreed to pay “all of the bills associated with the house including mortgage, taxes, insurance, utilities, including cable, maintenance and repair, including lawn care, car and health insurance for Susan and their daughter, Susan's cell phone, the child’s tuition at Sacred Heart, fees billed by the school, and the child’s lessons.” Mr. McClanahan also agreed to pay Susan "$3,000 per month, cash, in addition to the car expenses, including use of the car and car insurance.”

. After the community property partition judgment was final on appeal, in 2005 Mr. McClanahan sued Ms. Folse for malicious prosecution, alleging that many of Ms. Folse's claims for reimbursement in the partition suit, many of which were disallowed, were made with wanton and reckless disregard of his rights and with the intent to obtain an unfair advantage from him so that he would agree to pay more money in settling the community property partition. The trial court granted an exception of no right of action, dismissing Mr. McClanahan's various business entities as parties-plaintiff, which this Court affirmed. The trial court further granted summary judgment in favor of Ms. Folse, dismissing Mr. McClanahan’s suit against her with prejudice. This Court affirmed. McCla-nahan v. McClanahan, 11-284 (La.App. 5 Cir. 12/28/11), 82 So.3d 530.

.The dates of trial were October 25, 2002, and February 5, March 28, May 9, and June 3, 2003. Meanwhile, the parties had filed motions for a new trial regarding the partition judgment, which were also heard in June of 2003.

. This sentiment was codified as La. R.S. 9:315(A) by Acts 2001, No. 1082 ( ... child support is a continuous obligation of both parents, children are entitled to share in the current income of both parents, and children should not be the economic victims of divorce ....)

. At the time this matter was filed, this statute was numbered La. R.S. 9:315.10.

. At the time this matter was filed, the guidelines (schedule) were found in La. R.S. 9:315.14.

. In 2001, evidence showed receipts and expenditures of over $583,000.00 from Mr. McClanahan's personal checking account alone; the evidence also showed that this year was not an aberration.

.Although not applicable to the instant case, La. R.S. 9:315.1.1, effective in 2009, appears to have been passed by the legislature in response to cases like this one. ("The purpose of this Section is to facilitate the determination of actual income in child support cases when one of the parties is receiving benefits from a business in which he has an ownership interest and the other party alleges that the income of the obligor is being ‘concealed or underreported’. The allegation gives notice to the obligor of his obligation to produce evidence to rebut the presumptions created by this Section.” Comment (a).)

. At oral argument, counsel for Mr. McCla-nahan argued that the trial court erred in not following the income shares- approach to calculate the parties’ relative child support obligations. This was not argued in brief; further, this was not codified in La. R.S. 9:315 ei seq., at the time of the filing of this matter. In any event, the evidence shows that Mr. McClanahan’s income was vast in comparison to the income attributed to Ms. Folse.

. Article 112 was amended in 2006. This previous version of the Article is applicable to this case.

. The trial court clearly found Ms. Folse's medical conditions to be the impediment to her full time employment, rather than her responsibilities to care for the parties' minor child.

. As noted earlier, Article 112 was amended in 2006. This previous version of the Article is applicable to this case.

. Further, even though the trial court mentioned in its reasons for judgment that it remembered the parties reaching an off-the-record agreement to use March 28, 2003 as the effective date of the support awards, we first note that we do not find support in the record of any agreement reached between the parties or stipulation as to the effective date 'of the support awards. The lack of such an agreement between the parties is further confirmed in the parties' post-trial briefs, filed just weeks after the trial concluded in June of *600 2003. In her post-trial brief, Ms. Folse notes that the parties agreed to try the issue of retroactivity at a later date; whereas, in his post-trial brief, Mr. McClanahan argues that the awards should be made retroactive to the date of filing in 1999. Further, the trial court did not recall or mention anything about any "agreement” between the parties on this issue until writing his reasons for judgment on the parties' motions for a new trial, nearly ten years after the support trial was concluded. With all due respect to the trial court, we find more credence in the fact that the parties’ post-trial briefs, filed close in time to the end of trial, fail to mention an agreement or stipulation on this issue, rather than the trial court’s recollection of an agreement made ten years after the matter was submitted for judgment. We further agree with counsel for Ms. Folse that it strains logic and reason to find that such seasoned and competent counsel would have made such a critical agreement off the record when the date of conclusion of trial was yet uncertain, and such an agreement would have departed from the given law to the possible detriment of their respective clients.