PEYTON PETTIT GREENE

VERSUS

LANDON RONALD GREENE

NO. 19-CA-528

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 751-262, DIVISION "O"
HONORABLE DANYELLE M. TAYLOR, JUDGE PRESIDING

May 28, 2020

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and Stephen J. Windhorst

**AFFIRMED.**
    **SMC**
    **JGG**
    **SJW**

COUNSEL FOR PLAINTIFF/APPELLANT,
PEYTON PETTIT GREENE
    Phillip A. Wittmann
    Brooke C. Tigchelaar
    Bryant S. York

COUNSEL FOR DEFENDANT/APPELLEE,
LANDON RONALD GREENE
    Terri M. Miles

**CHEHARDY, C.J.**

On appeal, Peyton Pettit Greene challenges the trial court's grant of Landon Greene's Motion to Modify Child Support and the award of child support to Mr. Greene in the amount of $7,789.00 per month. For the following reasons, we find that the trial judge did not abuse her discretion in vacating the 2017 Consent Judgment and awarding child support. Accordingly, we affirm the trial court's judgment.

**Factual and Procedural History**

This is the second appeal in this litigious custody proceeding.[1] Peyton and Landon Greene were married on February 15, 1997. On July 6, 2015, Peyton Greene ("Peyton") filed a petition for divorce against Landon Greene ("Landon"). On August 11, 2015, the parties entered into a Consent Judgment in which the parties agreed to "joint shared" custody of their three minor children, with Peyton serving as domiciliary parent with a "50/50 visitation schedule." Further, Peyton was ordered to pay "100% of the children's private school tuition, registration, books, and supply fees, other fees, day care expenses and extracurricular activity costs for the minor children." On September 15, 2016, the judgment of divorce was granted.

On April 28, 2017, Peyton and Landon signed a subsequent Consent Judgment, stating, *inter alia*:

> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that in lieu of Plaintiff, [Peyton], paying a monthly child support to Defendant, [Landon], Plaintiff … shall pay one hundred (100%) percent of the children's private school tuition, registration, books, supply fees, other fees, reasonable and customary extracurricular activity expenses, reasonable and customary camp expenses, tutoring

---

[1] For the first appeal in this matter, *see Greene v. Greene*, 19-37 (La. App. 5 Cir. 12/11/19), 286 So.3d 1103. In that case, Peyton Greene appealed the trial court's judgment dismissing her (1) expedited motion for contempt against Landon and (2) request for an injunction against Landon for harassment including "walking on the sidewalk to her house during custody exchanges; by filming the custody exchanges; by ringing the doorbell to announce his presence at the door; by calling her names; by sending inappropriate gifts; and by engaging in problematic behavior with Peyton's current boyfriend during custody exchanges." This Court affirmed the trial court's judgment on the merits, yet reversed with respect to a non-party.

expenses, as well as medical, dental, and vision insurance for the children and medical, dental, vision and psychological expenses which are not covered by insurance.

On October 16, 2018, Landon filed a rule to modify custody alleging that the three minor children attend three different schools, which results in an exchange at the parties' homes every morning of the school week. Landon alleged that his new work schedule required out-of-town travel and sought a "week on/week off" schedule with the week beginning on Friday. Further, Landon contended that his income had decreased from $70,000.00 per year to $5,000.00 per year since 2017, which was a material change in circumstances, and, as such, he sought an award of child support under La. R.S. 9:315 *et seq*.

On November 14, 2018, after meeting with the parties, the hearing officer recommended that the parties implement the "week on/week off" schedule but, finding that there was insufficient documentation to make an interim support recommendation, deferred all child support matters until January 7, 2019.[2] On November 15, 2018, Landon filed an objection to the hearing officer's recommendations on the basis that the hearing officer should have made an interim award of support. To his objection, Landon attached the hearing officer's shared obligation worksheet dated November 14, 2018, with calculations indicating that Landon should be awarded "recommended child support … of $2,351.70." Peyton opposed Landon's objection.

On November 19, 2018, the trial judge heard Landon's objection, noting that her intent in sending the parties to the hearing officer on November 14 was for the hearing officer to set an interim child support award. That day, the trial judge ordered an interim child support award of $2,351.00 per month payable to Landon,

___

[2] Because of disagreement between the parties over the wording, the Consent Judgment implementing the hearing officer's recommendations from November 14, 2018 hearing was not approved for signing by the Domestic Commissioner until December 22, 2018. Further, we note that counsel for Peyton did not sign the copy in the appellate record.

retroactive to the date of filing.[3]  On December 3, 2018, Peyton sought supervisory review and a stay of the interim award with this Court; both were denied on December 17, 2018.[4]

On January 7, 2019, the hearing officer held a conference and increased the temporary support award to $2,370.00 per month.  On May 2, 2019, the trial on Landon's rule to set child support and rule for contempt began; it continued on May 21, May 23, June 12, and June 17, 2019.  On July 24, 2019, the trial judge granted Landon's rule, awarding him $7,789.00 per month in child support, retroactive to the date of demand, to be paid on the first day of every month, with the first payment due on August 1, 2019.[5]  Peyton now appeals that award.

## Assignments of error

In her brief, Peyton urges six assignments of error: first, the district Court erred by awarding child support to a non-domiciliary parent; second, the district Court erred by impermissibly nullifying the 2017 Consent Judgment, which was binding and enforceable; third, the district Court erred by negating the movant's

---

[3] Again, because of contentions between the parties, the Interim Judgment included in the record is not signed by counsel for Payton.  Further, the trial judge signed the judgment on December 20, 2018.

[4] *Greene v. Greene*, 18-695 (La. App. 5 Cir. 12/17/18) (unpublished writ disposition).

[5] Additionally, the July 24, 2019 Judgment also stated:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Ms. Greene shall continue to pay 100% of the children's private school tuition, registration, books, supply fees, and other mandatory fees; reasonable and customary extracurricular activities; reasonable and customary summer camp expenses; work-related childcare; tutoring expenses; medical, dental, and vision insurance for the children, and medical, dental, vision and psychological expenses which are not covered by insurance. In the event Mr. Greene incurs any of the medical, dental, vision, or psychological expenses, he shall forward copies of the bills for these uncovered expenses through "Our Family Wizard" and Ms. Greene shall reimburse him within 20 days of receipt of the bills.  Mr. Greene is allowed to participate in the selection of a counselor as well as counseling with the children.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that any expenses for the children to participate in the Krewe of Dorians Mardi Gras festivities shall be considered a reasonable and customary extracurricular activity and paid 100% by Ms. Greene.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Mr. Greene's Rule for Contempt is denied.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Ms. Greene reimburse Mr. Greene the $900.00 he expended for LR's participation in the Krewe of Dorians Mardi Gras Ball.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Ms. Greene reimburse Mr. Greene the $610.40 he expended for travel expenses transporting the girls to and from summer camp.

burden of proof; fourth, the district Court erred by not requiring a showing of a substantial, continuing change in circumstances to justify a modification of child support; fifth, the district Court erred by premising the modification of child support entirely on a one-time extraordinary transaction; and, sixth, the district Court erred by calculating child support not based on the children's needs, but on their father's desired lifestyle.

*Award to non-domiciliary parent*

In her first assignment, Peyton argues that the trial court erred in awarding child support in favor of Landon because he is the "non-domiciliary parent." As the trial judge pointed out in her well-written Reasons for Judgment,

> Ms. Greene further argues that she cannot be compelled to pay child support to Mr. Greene because she is the domiciliary parent although the Greenes have equal, shared custody of their children. First, Ms. Greene's counsel cites cases which are not analogous, as none concerned equal, shared custody, including the cited case that was decided by this trial court. Secondly, Ms. Greene cites La. R.S. 9:315.8 to support her argument. However, paragraph E of that article clarifies that the statute does not apply to "shared custody as defined in La. R.S. 9:315.9." Furthermore, paragraph (E)5 further substantiates that "Worksheet A .... shall be used in accordance with this subsection." Thus on its face and plainly stated in the statute, La. R.S. 9:315.8 is inapplicable to the Greene's custodial arrangement. This Court holds that La. R.S. 9:315.9, aptly titled "Effect of shared custodial arrangement" is the applicable statute to the case at bar. This statute makes no distinction between a domiciliary and non-domiciliary parent for the purposes of determining support in a shared custodial arrangement. Moreover, it requires the utilization of Worksheet B, which also does not make the distinction as argued by counsel for Ms. Greene. Thirdly, counsel for Ms. Greene argues that paragraph (7) of La. R.S. 9:315.9[A], states that
>
>> (7) The parent owing the greater amount of child support shall owe to the other parent the difference between the two amounts as a child support obligation. The amount owed shall not be higher than the amount which that parent would have owed if he or she were a domiciliary parent.
>
> Ms. Greene argues that the second sentence precludes an award of child support to a non-domiciliary parent. However, a plain reading of … that sentence demonstrates that the "parent owing the greater amount" owes the difference to the other parent without any distinction between domiciliary and non-domiciliary parents. As such, this Court finds this argument contrary to plainly stated law, and without merit.

We agree with the trial judge that La. R.S. 9:315.9(A)(7) does not preclude payment of child support to a non-domiciliary parent in a "shared custody" situation – the obligation is based solely on a proportion of income and time. This assignment has no merit. *See* La. R.S. 9:315.9; *Broussard v. Rogers*, 10-593 (La. App. 5 Cir. 1/11/11), 54 So.3d 826, 829.

*Consent Judgment*

In her second assignment of error, Peyton argues that the district court erred by nullifying the binding and enforceable 2017 Consent Judgment agreement between the parties, which was reversible error. Peyton contends, as she did in the district court, that Landon waived his right to child support in exchange for Peyton paying 100% of the children's tuition, expenses, and fees that are enumerated in the Consent Judgment, citing *Robertson v. Robertson*, 45, 289 (La. App. 2 Cir. 5/26/10), 37 So.3d 597.

Again, we look to the trial judge's well-written Reasons for Judgment, in which she clarifies that *Robertson* is inapplicable to Landon's situation:

> Ms. Greene cites the Second Circuit case of *Robertson v. Robertson*, … for the proposition that Mr. Greene must be bound by the prior consent agreement which deviated from the guidelines. This Court finds that the Second Circuit [case]'s facts … were diametrically opposite to the facts of this case. In *Robertson*, the court stated:
>
> > As recognized by both parties, there is a huge disparity in income and resources available to the two parties. Mr. Robertson is wealthy. Mrs. Robertson is not. As recognized in the judgment, this disparity in income was one of the factors used to deviate from the ordinary statutory scheme. There in nothing legally infirm with Mr. Robertson's agreement to pay child support so Mrs. Robertson can have the resources to provide and maintain a comfortable and safe living environment for the children when they are with her. This fosters the support and upbringing of these children. [*Robertson* at 601].
>
> Thus, *Robertson* advocates for a deviation in favor of payment to the un-wealthy spouse because it was in the best interest of the children. The Consent Judgment in this case does the opposite. In this case, the Greenes deviated in a manner that … provided no support for the children when they are with the un-wealthy spouse; the

> Consent Judgment at issue specifically does not provide the minimum support Mr. Greene would be statutorily entitled to receive. For these reasons, the Court finds that argument without merit.

As noted by the trial judge, in *Robertson*, the wealthy spouse willingly paid child support to the un-wealthy spouse to "maintain a comfortable and safe living environment for the children … to foster the support and upbringing of these children." *Robertson*, 37 So.3d at 601. Thus, we find *Robertson*, *supra*, inapplicable to this instant proceeding also.

We turn, now, to the 2017 Consent Judgment. La. C.C. art. 227 provides that parents, by the very act of marrying, contract together the obligation of supporting, maintaining, and educating their children. The obligation to support their children is conjoint upon the parents and each must contribute in proportion to his or her resources. *Hogan v. Hogan,* 549 So.2d 267 (La. 1989). As a complement to that obligation, La. R.S. 9:315 - 315.15 provides a detailed set of guidelines that the courts are mandated to follow in setting the amount of child support in "any proceeding to establish or modify child support filed on or after October 1, 1989." La. R.S. 9:315.1(A); *Hildebrand v. Hildebrand,* 626 So.2d 578 (La. App. 3 Cir. 1993). As stated in La. R.S. 9:315.1(A), the amount determined by the guideline formula is *presumed* to be in the child's best interest. *Percle v. Noll,* 93-1272 (La. App. 1 Cir. 3/11/94), 634 So.2d 498.

Under La. R.S. 9:315.1(B), the parties may deviate from the guidelines if the application of the guidelines would not be in the best interest of the child or would be inequitable to the parties. In this instance, it is incumbent upon the trial court to "give specific oral or written reasons for the deviation, including a finding as to the amount of support that would have been required under a mechanical application of the guidelines and the particular facts and circumstances that warranted a deviation from the guidelines." *Id.* Moreover, there will be instances where the parents will stipulate (consent) to an amount of child support. La. R.S. 9:315.1(D)

provides:

> The court may review and approve a stipulation between the parties entered into after the effective date of this Part as to the amount of child support to be paid. If the court does review the stipulation, the court shall consider the guidelines set forth in this Part to review the adequacy of the stipulated amount, and may require the parties to provide the court with the income statements and documentation required by R.S. 9:315.2.

"(W)hen the trial court reviews the agreement proposed by the parents, it 'shall consider the guidelines ... to review the adequacy of the stipulated amount.'" *Stogner v. Stogner*, 98-3044 (La. 7/7/99), 739 So.2d 762, 766.

"Such an approach underscores the integral role of the trial court as gatekeeper in this area of paramount importance. If properly performed in accordance with the guidelines, this judicial review will further assure the adequacy and consistency of child support awards, foster evenhanded settlements, and preserve a record for the evaluation of later proceedings to modify initially stipulated child support awards." *Stogner, supra.*

As noted by the trial judge, according to all testimony, the hearing officer accepted the Consent Judgment in 2017 without proof of income from any parties because Peyton refused to divulge her income information to Landon or the court. In *Stogner*, the Louisiana Supreme Court challenged the lower courts to function as "gatekeeper in this area of paramount importance … [to] further assure the adequacy and consistency of child support awards, foster evenhanded settlements, and preserve a record for the evaluation of later proceedings to modify initially stipulated child support awards." *Stogner, supra* at 768. The trial judge found that neither the hearing officer nor the original trial judge functioned as the gatekeeper envisioned by the *Stogner* court. We find no error in that ruling.

*Change in circumstances*

Moving to her third and fourth assignment of error, Peyton argues that the district court erred by not requiring Landon to bear a burden of proof to show a

continuing change in circumstances to justify a modification of child support. Here, the trial judge found that the 2017 Consent Judgment did not rely upon the guidelines as the agreement failed to fix a support obligation between the parties, which amounted to *de facto* waiver of support by Landon that is void and against public policy. *See Sharp v. Moore*, 47,888 (La. App. 2 Cir. 2/27/13), 110 So.3d 1232, 1236. Because the 2017 Consent Judgment is void as a matter of public policy and also failed to comply with the guidelines, there was no necessity for Landon to show a change in circumstances according to La. C.C. art. 142; La. R.S. 9:311, *Stogner, supra*. For these reasons, the trial court was not in error for "nullifying the 2017 Consent Judgment."

*Child support award*

In her remaining assignments of error, Peyton challenges the child support award to Landon. In a shared custody situation, such as this, the determination of an award of child support is made pursuant to La. R.S. 9:315.2, which states:

A. Each party shall provide to the court a verified income statement showing gross income and adjusted gross income, together with documentation of current and past earnings. Spouses of the parties shall also provide any relevant information with regard to the source of payments of household expenses upon request of the court or the opposing party, provided such request is filed in a reasonable time prior to the hearing. Failure to timely file the request shall not be grounds for a continuance. Suitable documentation of current earnings shall include but not be limited to pay stubs, employer statements, or receipts and expenses if self-employed. The documentation shall include a copy of the party's most recent federal tax return. A copy of the statement and documentation shall be provided to the other party.

B. If a party is voluntarily unemployed or underemployed, his or her gross income shall be determined as set forth in R.S. 9:315.11.

C. The parties shall combine the amounts of their adjusted gross incomes. Each party shall then determine by percentage his or her proportionate share of the combined amount. The amount obtained for each party is his or her percentage share of the combined adjusted gross income.

D. The court shall determine the basic child support obligation amount from the schedule in R.S. 9:315.19 by using the combined

adjusted gross income of the parties and the number of children involved in the proceeding, but in no event shall the amount of child support be less than the amount provided in R.S. 9:315.14.

E. After the basic child support obligation has been established, the total child support obligation shall be determined as hereinafter provided in this Part.

In a shared custody arrangement, La. R.S. 9:315.9(B) provides that "Worksheet B reproduced in R.S. 9:315.20, or a substantially similar form adopted by local court rule, shall be used to determine child support in accordance with this section."

In the present case, during the 5-day trial, the parties introduced more than 1500 pages of exhibits regarding child support. Three days before trial commenced on May 2, 2019, Peyton, under threat of contempt, reluctantly "supplemented" her previous Family Law Affidavit with documentation of her 2018 revenue. Peyton averred that she is a shareholder in four entities that distributed $2,141,903.00 to her in 2018, which was unusually high due to a one-time distribution on a five-year lease. Peyton also admitted that she received royalty payments totaling $16,204.60. Finally, she also stated that, as the beneficiary of a trust, she received income totaling $165,000.00. For 2018, Peyton received revenue totaling at least $2,323,107.60.

Based on documentation that Peyton introduced, the trial court recognized that the most significant distribution to Peyton is attributable to a five-year lease, so the trial court divided the total lease payment that Peyton received and prorated it prospectively over the next five years, i.e., $1,973,747.80 ÷ 5 = $394,749.56 per year. To calculate Peyton's monthly income, the trial court took Peyton's total revenue minus the entire one-time lease payment, to find her remaining income, which is $349,359.80. To get Peyton's adjusted 2018 income, the trial court added the revenue to the prorated lease payment for a total of $774,109.36.

| | |
|---|---|
| 2018 Total Revenue | $2,323,107.60 |
| -2018 Total Lease Payment | $1,973,747.80 |
| *2018 Revenue without Lease* | *$349,359.80* |
| + Prorated payment for 2018 | $394,749.56 |
| 2018 Adjusted Income | $744,109.36 |

The trial court found that, with an adjusted income of $744,109.36, Peyton's income per month in 2018 was $62,009.11.

Under direct examination, Landon testified that his adjusted gross income for 2018 was $37,291.00, which is $3,107.58 per month. He testified that he was a health insurance sales representative, which he had been since 2013. A Family Law affidavit, numerous bank account ledgers, and Landon's 2015 through 2018 federal income tax returns were introduced at trial.

The trial court found that the evidence established that the monthly income of the parties for 2018 was $65,116.69, with Peyton's percentage of the monthly income being 95.23% and Landon's being 4.77%.

La. R.S. 9:315.13(B) provides, in pertinent part:

If the combined adjusted gross income of the parties exceeds the highest level specified in the schedule contained in R.S. 9:315.19, the court:

(1) Shall use its discretion in setting the amount of the basic child support obligation in accordance with the best interest of the child and the circumstances of each parent as provided in Civil Code Article 141, but in no event shall it be less than the highest amount set forth in the schedule; and

Further, La. R.S. 9:315.13, Comments, 2001, reads that child support is to be "measured by the standard of living enjoyed by the child while living with his intact family and upon the ability to pay of each of the parents."

In this case, as noted by the trial judge, $65,116.69 is well above the highest amount set forth in the child support schedules found in La R.S. 9:315.19. The highest combined gross income on the current schedule is $40,000.00, and the

highest child support award for three children would be $5,640.00.

Here, the trial court awarded Landon $7,789.00 per month in child support, and ordered Peyton to pay the children's tuition, insurance, and other necessary and extraordinary expenses. As the amount of child support is tied to the obligor parent's ability to pay, coupled with the lifestyle the children enjoyed during the marriage, the evidence fully supports this amount. Testimony reflects that, during the marriage, Peyton, Landon, and, more importantly, their children, enjoyed a luxurious lifestyle of privilege, including private schools, international travel, luxurious homes, and luxury vacations.

It is well settled that the district court's conclusions of fact regarding financial matters underlying an award of child support will not be disturbed in the absence of manifest error. *McClanahan v. McClanahan*, 14-670 (La. App. 5 Cir. 3/25/15), 169 So.3d 587, 593-95; *Hall v. Hall*, 08-706 (La. App. 5 Cir. 2/10/09), 4 So.3d 254, 259, *writ denied*, 09-812 (La. 5/29/09), 9 So.3d 166. Having reviewed all of the evidence and testimony, and considering the applicable law, we find no manifest error, or abuse of the trial court's discretion, in its setting of the amount of the child support award and, thus, affirm the award.

**Conclusion**

For the foregoing reasons, the trial court's award of child support is affirmed.

**AFFIRMED**.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



**FIFTH CIRCUIT**
101 DERBIGNY STREET (70053)
POST OFFICE BOX 489
GRETNA, LOUISIANA 70054
www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MAY 28, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 19-CA-528

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DANYELLE M. TAYLOR (DISTRICT JUDGE)
BRYANT S. YORK (APPELLANT)          JENNIFER C. CARTER (APPELLEE)

**MAILED**
TERRI M. MILES (ATTORNEY)          BROOKE C. TIGCHELAAR (ATTORNEY)
830 3RD STREET                     PHILLIP A. WITTMANN (ATTORNEY)
GRETNA, LA 70053                   909 POYDRAS STREET
                                   SUITE 3150
                                   NEW ORLEANS, LA 70112