BROWN, Chief Judge.
' | ] Questions concerning community or co-owned property and the retroactive application of a final child support judgment are at issue in this appeal. We affirm in part and reverse in part.

Facts and Procedural Background

After three years of living together, appellant, Gregory Stephen Shaw, and appel-lee, Pattie Gilbert Shaw, married on February 2, 2001. One child was born during this marriage. On February 19, 2009, Ms. Shaw filed a petition for divorce, custody, and permanent child support.
The Shaws executed a post-nuptial agreement on July 11, 2001, whereby they acknowledged a partition of their community property and established a separate property regime. A judgment approving the Shaws’ petition was signed on July 13, 2001.[1] Prior thereto, on May 31, 2001, Pattie Shaw formed Lancer Link Express, Inc. At the time of the post-nuptial execution, Lancer Link Express had not begun business operations or acquired any assets.
The Shaws worked together out of their home as freight brokers for Lancer Link Express. Upon the breakdown of them marriage, Mr. Shaw left the employ of the business. While the record is light on specifics, it is known that Mr. Shaw was *237 unemployed for an extended period, during which he allegedly survived monetarily on unemployment benefits, raiding his retirement accounts, selling his baseball cards and gambling (the child support worksheet filed in the record shows that he earned $1,300 monthly | ^shooting pool at Fast Eddies). Mr. Shaw attempted to start a competing freight brokerage firm until Ms. Shaw enjoined him from contacting Lancer Link Express clients. Ultimately, Mr. Shaw obtained full-time employment with Ashley Ann Energy. We also note that, on the date of judicial demand, February 19, 2009, the petition filed by Ms. Shaw sets forth her belief that Mr. Shaw was “living from his vehicle and/or residing at American Best Value Inn, Bossier City, Louisiana.”
By agreement, an interim child support order was issued on October 28, 2009, requiring Mr. Shaw to pay monthly child support in the amount of $80 effective November 1, 2009. On April 19, 2010, a judgment of divorce was rendered granting joint custody to the parties and designating Ms. Shaw as the domiciliary parent. At that time, the parties reached another agreement as to child support and, on April 29, 2010, a second interim child support order was signed wherein Mr. Shaw was ordered to pay $500 per month retroactive to March 2, 2010, plus six monthly installments of an additional $130 to cover his arrears of $840. On April 21, 2010, Mr. Shaw filed a petition for judicial partition of community and/or co-owned property. On July 22, 2010, Ms. Shaw filed a rule to set permanent child support. Both the partition and permanent child support issues were heard on November 29, 2010. The parties agreed, and it was so ordered on December 17, 2010, that Mr. Shaw would pay monthly child support in the amount of $1,328 “at least retroactive back to July (22, 2010),” plus six monthly installments of an additional $482 to cover his arrears of $2,892. The trial court ordered the parties each to submit a memorandum of law ^regarding whether the permanent child support order should be made retroactive to the date of the initial judicial demand, February 19, 2009. Additionally, in response to the petition for judicial partition of community and/or co-owned property filed by Mr. Shaw, the trial court ordered each party to submit a memorandum of law regarding the legal effect of the post-nuptial agreement on the classification of property acquired prior to the execution of that agreement. Of particular import was the freight brokerage business, Lancer Link Express. Mr. Shaw also sought reimbursement of $15,000 he claims to have given to Ms. Shaw as a down payment for the home she purchased during their marriage.
On March 24, 2011, after hearing further arguments, the trial court, relying on the recent supreme court case of Vaccari v. Vaccari, 10-2016 (La.12/10/10), 50 So.3d 139, held that the final child support judgment was retroactive to the date of the judicial demand, February 19, 2009. The court also determined that all shares of stock issued by Lancer Link Express to Ms. Shaw were her separate property. The court did not address the issue concerning Mr. Shaw’s claim for reimbursement of $15,000.

Discussion

Community property

Mr. Shaw contends that the trial court erred in ruling that the parties’ post-nuptial agreement terminated the existence of the community property regime as to property acquired before its execution. Specifically, Mr. Shaw contends that the trial court erred in ruling that all outstanding stock in Lancer Link Express was the separate property of Ms. Shaw.
*238 |4The legal regime of married persons is the community of acquets and gains. La. C.C. art. 2327. Spouses may enter into a matrimonial agreement during marriage to modify or terminate the matrimonial regime only upon a joint petition and a finding by the court that it serves the parties’ best interests. La. C.C. art. 2329. A matrimonial agreement is a contract establishing a regime of separation of property or modifying or terminating the legal regime. Spouses are free to establish by matrimonial agreement a regime of separation of property or modify the legal regime as provided by law. The provisions of the legal regime that have not been excluded or modified by agreement retain their force and effect. La. C.C. art. 2328.
As noted infra, the Shaws executed a post-nuptial agreement on July 11, 2001, whereby they acknowledged a partition of their community property and established a separate property regime. This agreement was approved by a judgment signed on July 13, 2001. Lancer Link Express was formed by Ms. Shaw on May 31, 2001. At the time of the parties’ post-nuptial agreement, Lancer Link Express had not begun business operations or acquired any assets.
Mr. Shaw contends that since the company was formed prior to the establishment of the parties’ separate party regime, it remains community property held in indivisión by the parties since no partition of the property of their “community” has ever been effected. The trial court found, however, that the post-nuptial agreement clearly terminated the community of acquets and gains relating to all property acquired during the parties’ marriage, including ownership of Lancer Link Express. We agree.
|sRelevant portions of the Shaws’ post-nuptial agreement state:
Paragraph II: During the marriage the parties have not acquired property, which was classified as community property under them previous regime. The parties hereby settle all claims, rights, and obligations resulting from their community property regime and enter into a separation of property regime. Paragraph VI: IN CONNECTION BOTH PARTIES DO ASSERT AND AFFIRM THAT THEY HAVE READ THIS AGREEMENT AND FULLY UNDERSTAND IT AND THAT THEY HAVE RECEIVED SUBSTANTIALLY EQUAL PROPERTY IN THIS PARTITION AGREEMENT ...
Paragraph VIII: Each party agrees and stipulates that this agreement is a compromise of the disputes existing between them and has entered into for the purpose of partitioning the community of gains previously existing between them ... (Emphasis added).
It is clear that the parties intended to terminate the community property regime, and that they did in fact partition all existing community property prior to the establishment of their separate property regime. Mr. Shaw’s claim to the contrary is not supported by the executed agreement.

Child Suppoti Retroactive to Date of Judicial Demand

La. R.S. 9:315.21 sets forth the circumstances in which a court may make a child support judgment retroactive:
A. Except for good cause shown, a judgment awarding, modifying, or revoking an interim child support allowance shall be retroactive to the date of judicial demand, but in no case prior to the date of judicial demand.
B. (1) A judgment that initially awards or denies final child support is effective as of the date the judgment is signed and terminates an interim child support allowance as of that date.
*239 (2) If an interim child support allowance award is not in effect on the date of the judgment awarding final child support, the judgment shall be retroactive to the date of judicial demand, except for good cause shown, but in no case prior to the date of judicial demand.
IfiUntil Vaccari, supra, the consensus among the appellate circuits was that, based upon La. R.S. 9:315.21(B)(1), a final child support judgment was not retroactive to the date of judicial demand when an interim child support award had been in effect. In Vaccari the supreme court found, however, that the statute did not expressly forbid a court from making a final child support award retroactive, and that the absolute denial of retroactivity in 9:315.21(B)(1) situations had the possibility of leading to absurd and unjust outcomes.
In Vaccari, supra, Mr. Vaccari submitted an affidavit at the hearing on his ex-wife’s demand for interim child support stating that his 2004 income was approximately $262,000. Based upon this representation, the court ordered Mr. Vaccari to pay $7,000 per month in interim child support. In the following years, a particularly contentious discovery process played out wherein both parties were accused of withholding financial information, including tax returns and corporate records. Eventually, the trial court appointed a forensic accountant to examine the parties’ finances. The court-appointed accountant determined that Mr. Vaccari’s 2004 income was substantially higher than originally claimed. Rather than the reported $262,000, his income was more than $3.5 million for the year in question. As a result, the trial court found that Ms. Vac-cari was entitled to a final monthly child support award of $16,546 retroactive to the date of judicial demand. On appeal, the court of appeal reversed, finding that the trial court did not have the statutory authority to make the award retroactive, The Louisiana Supreme Court granted Ms. Vaccari’s writ “to clarify under what ^circumstances an award of final child support may be made retroactive to the date of judicial demand.” The supreme court, 50 So.3d at 140-41, stated:
We reverse and reinstate the judgment of the trial court, finding the relevant statute does not forbid a court from rendering a final child support award retroactive, and good cause exists for the trial court to do so here. This is not to say a final child support award must be retroactive, or even that it should be made retroactive in every proceeding. But in cases such as this one, where a party files a false affidavit in an effort to avoid the full extent of his child support obligation, it is only proper to make the award retroactive so he will not benefit from his own misdeeds. (Emphasis added).
The supreme court’s determination that the final support judgment should be made retroactive was directly related to Mr. Vaccari’s “obfuscatory tactics” and his “misrepresenting material facts.” The court deduced that, had Mr. Vaccari been open and truthful from the outset, the original interim support award would have been significantly higher. Thus, the retro-activity of the judgment “treat[ed] him the same as if he had been truthful all along.”
Accordingly, Vaccari carved out an exception to the absolutism in which appellate courts were denying retroactivity in La. R.S. 9:315.21(B)(1) situations. “Upon a showing of good cause, a trial court may order a final child support award retroactive to the date of judicial demand even though there has been an interim award in effect.” Vaccari, supra at 143. Many divorce, custody, and/or support cases involve a heightened level of contention and gamesmanship, but in egregious instances, *240 such as the gross misrepresentation of a material fact in Vaccari, the supreme court clarified that retroactivity was just and proper so that a party could not benefit from |Rhis own misdeeds. While this clearly opens the door for trial courts to make final child support judgments retroactive to the date of judicial demand when an interim support award had been in effect, retroactivity is the exception, not the rule.
The supreme court’s decision in Vaccari, supra, also shifted the burden of proof. Unlike all other subsections of La. R.S. 9:315.21 that required retroactivity, “except for good cause shown,” final judgments issued in accordance with La. R.S. 9:315.21(B)(1) are only to be retroactive “upon a showing of good cause.” Thus, the burden of proof would be on the obli-gee.
In the case sub judice, Mr. Shaw and Ms. Shaw worked together out of their home as freight brokers. With them separation, Mr. Shaw had to leave his employment with the family business. Mr. Shaw was unemployed for an extended period, during which he allegedly survived monetarily on unemployment benefits, raiding his retirement accounts, shooting pool, and selling his baseball cards. Mr. Shaw attempted to start a competing freight brokerage firm but was enjoined from contacting Lancer Link Express clients. We again note that, on the date of judicial demand, February 19, 2009, the petition filed by Ms. Shaw sets forth her belief that Mr. Shaw was “living from his vehicle and/or residing at American Best Value Inn, Bossier City, Louisiana.”
Mr. Shaw eventually found employment with Ashley Ann Energy. At the time when final child support was agreed to, the Louisiana Child Support Worksheet showed that he earned monthly $5,375 from Ashley 19Ann Energy and $1,300 “on gambling earnings from shooting pool at Fast Eddies.”[2]
At the hearing to set permanent child support on March 24, 2011, the trial court, in holding that the final child support judgment was retroactive to the date of judicial demand, stated:
Well, good cause is a lot of things. One thing good cause is, is that this child, [ ] needs support, and, you know, our law recognizes that both parents support their child.
[[Image here]]
I think there is good cause to make it retroactive and I believe that according to Vaccari it could be retroactive and should be retroactive to the February 19, 2009, was the date of judicial demand. I don’t believe that I have any discretion in that, other than, whether or not I think there is good cause. I think that it says that I — let’s see — shall be retroactive to the date of judicial demand except for good cause shown.
We find the trial court’s reasoning to be flawed for two reasons. First, the good cause upon which the trial court relied is all encompassing and universal-all children need the support of their parents. If we allowed that reasoning to stand, there would be no limitation on the ability of a court to make final support judgments retroactive when an interim support award has been in effect. Second, the trial court misapplied or misread the statutory provision. The trial court appears to be erroneously guided by one of the other subsections of La. R.S. 9:315.21 which requires retroactivity except for good cause shown by the obligor, Mr. Shaw. Under Vaccan, this is a misstatement of the applicable law. As to the pertinent section of the law, La. R.S. 9:315.21(B)(1), the burden of *241 proving good cause is on the obligee, Ms. Shaw.
ImWe find that, based upon the record before us, there was no showing of good cause to make the final child support judgment retroactive. There are no allegations or findings of misrepresentations of material facts or other misdeeds on the part of Mr. Shaw. There was a period during which Mr. Shaw made no child support payments. This period, it appears, is partly the basis upon which the trial court found good cause. We note, however, that this period also preceded the awarding of interim child support. In accordance with La. R.S. 9:315.21 (A), interim child support could have been awarded retroactively; however, the parties reached an agreement on the amount of the interim support and the date of its effectiveness. Prior to the initial interim support award, Mr. Shaw had been unemployed so the parties agreed to a low support amount and not to make the interim award retroactive.
In summation, the Shaws agreed to the terms of the interim support award. They agreed to the amount, the effective date, and the retroactivity (or lack thereof) of the support award. Now, Ms. Shaw is arguing that good cause exists to make the final support judgment retroactively apply to the period for which the agreement covered. There are no allegations that Ms. Shaw was induced into the agreements by trickery or deception, or that Mr. Shaw misrepresented his finances. Clearly, the underlying facts in this proceeding do not rise to the level of egregiousness that led to the supreme court’s holding in Vaccari, supra. As such, the trial court erred in making the final child support award retroactive to the date of judicial demand.[3]

\ ^Conclusion

For the reasons stated above, that portion of the judgment of the trial court finding Lancer Link Express, Inc., to be the separate property of appellee, Pattie Gilbert Shaw, is affirmed. That portion of the judgment making the final child support award retroactive to the date of judicial demand, however, is reversed. Judgment is thus entered affirming the trial court’s judgment, except that final child support shall be retroactive from the date the parties agreed to, July 22, 2010. Nothing has been presented concerning the alleged reimbursement of $15,000 due to Mr. Shaw and, like the trial court, we have no evidential basis on which to award such a reimbursement. Costs of this appeal are assessed to the parties equally.
APPLICATION FOR REHEARING
Before BROWN, CARAWAY, DREW, LOLLEY, and SEXTON, JJ.
Rehearing denied.

. The Shaws had executed a prenuptial separate property agreement but later learned that it did not comport with the requirements of law. On advice of counsel the post-nuptial agreement was executed and approved by the court.

. Paul Newman played a pool hustler called Fast Eddie in the movie "The Hustler.”

. The date the judgment was signed terminating interim support and awarding final support was December 17, 2010; however, the parties agreed that it would be retroactive at least from July 22, 2010, the date the rule was filed.