Judgment rendered August 23, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,137-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

MICHAEL STEVEN LEDET                    Plaintiff-Appellee

versus

CHRISTINE DIAPAUL                       Defendant-Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 577,772

Honorable Karelia R. Stewart, Judge

* * * * *

WEEMS, SCHIMPF, HAINES,                 Counsel for Appellant
& MOORE, APLC
By:  Kenneth Patrick Haines

JAMES HARRY ASKEW, APLC                 Counsel for Appellee

* * * * *

Before THOMPSON, ROBINSON, and HUNTER, JJ.

**ROBINSON, J.**

Christine Diapaul ("Diapaul") appeals the December 15, 2021, judgment that awarded final child support to be paid by Michael Steven Ledet ("Ledet") unto Diapaul in the amount of $700 per month, a reduction from $2500 per month as set forth in the interim orders dated August 28, 2014, and July 15, 2015. This judgment was applied retroactively and a money judgment was rendered in favor of Ledet against Diapaul for repayment of the total overpayment of child support in the amount of $206,182.86, together with legal interest from date of judgment until paid. The judgment provided that the money judgment could be retired either by Diapaul's direct monthly payment to Ledet in the amount of $200, or by Ledet's deduction of $200 from the monthly support amount owed to Diapaul.

Ledet answered Diapaul's appeal seeking relief from the restrictions placed upon repayment of the money judgment. For the following reasons this judgment is reversed and remanded with instructions.

## FACTS AND PROCEDURAL HISTORY

Ledet initiated this case with his filing of a petition to establish paternity and for child custody on June 27, 2014, when the minor child was approximately two years old. Diapaul filed a reconventional demand seeking child support on July 22, 2014.

An interim order was issued on the consent of the parties and signed on August 28, 2014. It granted the parties joint legal custody, with Diapaul as domiciliary parent, subject to physical custody with Ledet on specific dates and times set forth in the order. Ledet was ordered to pay child

support in the amount of $2,500 per month, plus 100% of the costs of health care insurance and uncovered health care for the child. Diapaul was ordered to pay 100% of the costs of the child's daycare expenses.

A second interim order was signed on July 15, 2015. The parties maintained joint legal custody of the child, but agreed to an equally shared physical custody arrangement. Child support obligations remained the same.

Ledet filed a motion to reduce child support on May 12, 2017, which is at issue in this appeal. He requested that the matter be set for trial, he be designated domiciliary parent, and child support be set "in accordance with the Louisiana Child Support Guidelines." Ledet specifically requested, among other items, that the parties pay a percentage of noncovered healthcare costs and extracurricular activity expenses, and he be allowed to claim the child as a dependent for income tax purposes. A trial was held and two judgments were entered regarding custody issues, but there was no final determination of child support.

Both parties changed lawyers in 2018 and a series of discovery disputes ensued with each party attempting to reset "all pending rules," delaying the matter. Ledet moved to reset on April 12, 2021, and Diapaul objected May 21, 2021, due to counsel unavailability. On October 5, 2021, the parties appeared before the trial court and entered a consent judgment resolving all custody issues. The trial judge also signed an order on October 6, 2021, setting the trial on Ledet's motion to determine final support for November 29, 2021, and establishing a discovery schedule. Diapaul's then lawyer was also allowed to withdraw, but the trial court specifically

2

provided that the withdrawal would not be grounds to continue the child support trial.

The matter was tried over the course of three separate days: November 29, 2021, December 8, 2021, and December 15, 2021. Diapaul was not represented by counsel during trial. A judgment was rendered on December 15, 2021, and signed on January 3, 2022, ordering Ledet to pay Diapaul $700 per month in child support, pay the child's private school tuition, maintain the child on insurance, pay 100% of noncovered medical expenses, and pay 50% of agreed extracurricular activities for the child. The December 2021 judgment also granted Ledet a money judgment against Diapaul in the amount of $206,182.86 for overpayment of child support. Diapaul was allowed to "retire" the money judgment by paying Ledet $200 per month or by Ledet paying $200 a month less in child support.

Diapaul timely appealed the December 2021 judgment on January 24, 2022. However, on May 6, 2022, the court reporter sent a letter to the trial court and counsel indicating that the December 15, 2021, transcript of proceedings had been lost and could not be reproduced due to a malfunction of the court reporting equipment.

Diapaul filed a motion for narrative of facts pursuant to La. C.C.P. art. 2131 on May 24, 2022. Both parties filed their respective proposed narrative of facts on August 5, 2022, and Diapaul filed a response to Ledet's proposed narrative the same date. The trial judge held a hearing on October 4, 2022, and "adopted" Ledet's proposed narrative of facts, rejecting Diapaul's. The court did not construct its own separate narrative of facts.

Ledet filed an answer to Diapaul's appeal on February 3, 2023, claiming the trial court erred by placing restrictions upon repayment of the money judgment owed to him by Diapaul.

## DISCUSSION

### *Incomplete Record*

There is no transcript of the third and last day of trial, December 15, 2021, due to a malfunction of the court reporting equipment. The trial itself actually concluded on the second day, December 8, but oral reasons for judgment were given on the third day.

Upon discovery of the missing portion of the trial transcript, Diapaul filed a motion for narrative of facts pursuant to La. C.C.P. art. 2131 on May 24, 2022. La. C.C.P. art. 2131 provides:

> If the testimony of the witnesses has not been taken down in writing the appellant must request the other parties to join with him in a written and signed narrative of the facts, and in cases of disagreement as to this narrative or of refusal to join in it, at any time prior to the lodging of the record in the appellate court, the judge shall make a written narrative of the facts, which shall be conclusive.

Both parties filed their respective proposed narrative of facts on August 5, 2022, and Diapaul filed a response to Ledet's proposed narrative the same date. A hearing was held on October 4, 2022, in which it "adopted" Ledet's proposed narrative of facts and rejected Diapaul's, rather than construct its own separate narrative of facts.

Diapaul argues that the case should be remanded for a new trial based on an incomplete record, due to the missing portion of the trial transcript and the fact that the trial court did not construct its own narrative of facts, but rather merely adopted Ledet's proposed narrative of facts. She also noted

4

that the trial court erred by reviewing information submitted by Ledet's counsel "off the record" that was not admitted into evidence. She urges that critical information is missing such that this Court may not adequately review the trial court's proceedings.

Diapaul, citing *Minton v. Acosta*, 21-1180 (La. App. 1 Cir. 6/03/22), 343 So. 3d 721; and *Tillery v. State Dept. of Public Safety & Corrections*, 07-1228 (La. App. 1 Cir. 2/8/08), 984 So. 2d 742, further urges that the matter be remanded for a new trial because she, as the appellant, bears the responsibility of securing either a transcript or a narrative of facts, and because the judgment, without a transcript or narrative, would be entitled to a presumption of correctness.

This Court in *Rose v. Rose*, 44,467 (La. App. 2 Cir. 6/24/09), 2009 WL 1782811, speaks to the presumption that a judgment is supported by the evidence when a trial transcript is not included in the record, as follows:

> The appellant has the duty to secure either a transcript of the trial or a narrative of facts; the inadequacy of the record is imputable to the appellant. *Steinhoff v. Steinhoff*, 03-24 (La. App. 3 Cir. 4/30/03), 843 So. 2d 1290; *Preuett v. Preuett*, 517 So. 2d 848 (La. App. 3 Cir. 1987). In the case of a lack of a transcript or narrative of facts in the appellate record, the judgment of the trial court is presumed to be supported by competent evidence. *Succession of Rock v. Allstate Life Ins. Co.*, 340 So. 2d 1325 (La. 1976); *Raia v. WWL–TV*, 247 La. 1095, 176 So. 2d 390 (1965); *Maurer v. Haefner*, 192 La. 929, 189 So. 579 (1939); *Williams v. Burnham*, 185 La. 791, 171 So. 33 (1936); *City of Shreveport v. Maroun*, 134 La. 148, 63 So. 857 (1913); *Simmons v. Yelverton*, 513 So. 2d 504 (La. App. 2 Cir. 1987); *Succession of Walker*, 276 So. 2d 372 (La. App. 2 Cir. 1973), *writ granted*, 279 So. 2d 691 (La. 1973), *affirmed,* 288 So. 2d 328 (La. 1974). Said another way, review is limited to determining whether the trial court correctly applied the law to the facts it found. *Steinhoff*, *supra.* An exception to this rule exists when the trial court has supplied extensive written reasons for judgment which the appellate court may consider in lieu of a transcript or a narrative of facts. *Simmons*, *supra.*

5

La. C.C.P. art. 2131 provides that if the testimony of a witness has not been taken down in writing, the appellant has a *duty* to provide a narrative of facts joined in by both parties; but in the absence of agreement, the trial judge has the duty to make a narrative of facts. *Jacobs v. Grayson*, 421 So. 2d 394 (La. App. 1 Cir. 1982). However, La. C.C. P. art. 2131 – and its burden on the appellant – does *not* apply where the testimony of the witnesses has been recorded or taken down during trial, but due to mechanical failures or some other cause beyond the control of the parties, all or part of the testimony cannot be transcribed. *Id*., *citing Willis v. Gulf Bldg. Services of Baton Rouge*, 372 So. 2d 635 (La. App. 1 Cir. 1979), and *Kay v. Home Indemnity Company*, 301 So. 2d 705 (La. App. 3 Cir. 1974). In such instances, the case should be remanded for the purpose of taking the testimony of those witnesses who testified at trial. *Id*. The court in *Jacobs* remanded the matter to the trial court, but for the *limited* purpose of retaking the testimony of the witnesses who testified at trial. *Id*.

In other words, when the missing testimony is due to no fault of the parties, the court is to remand for the limited purpose of obtaining only the missing testimony, so as not to prejudice either party. As to the remaining record, there is a presumption that the judgment is supported by competent evidence, such that review is limited to determining whether the trial court correctly applied the law to the facts it found.

First, we do not find that La. C.C.P. art. 2131 imposes any obligation on the trial court to *separately construct* its own narrative of facts, or that it bars the court from "adopting" one party's narrative that it supports. Second, and most importantly, this article appears to apply to a missing

6

transcript of *witness testimony*. In this case, the missing trial transcript was for the last day of trial when no evidence was introduced and no testimony was taken. The court solely provided its reasons for judgment after the trial had concluded. The purpose of constructing a narrative of facts per Article 2131 is so that it can be used in lieu of a missing transcript or recording of trial *testimony*. In this case, there is no missing testimony. Nevertheless, whether or not a 2131 hearing was proper or necessary, the court did provide a narrative of facts by virtue of its adoption of Ledet's narrative and gave *some* insight as to its reasons for the December 2021 judgment during the hearing, however vague those reasons may have been.

As to Diapaul's concerns regarding the information submitted by Ledet's counsel "off the record" that was not admitted into evidence, this particular item was merely a revised worksheet. This worksheet reflected the removal of Ledet's payment of the child's tuition from the expenses in the child support calculations, per the court's order and instruction on the first day of trial. The court never requested or required it be submitted into evidence, since it was merely to assist the court in its calculations. The original worksheet was included in Ledet's bench book, which was timely provided to Diapaul and the court, and was admitted into evidence. The revised worksheet was also provided to Diapaul between the first and second days of trial (not the third day for which the transcript is missing), prior to submission to the court.

The only information missing in the record is the transcript from the last day of trial that supposedly included the court's reasons for judgment. Those reasons were ultimately provided by way of the 2131 hearing. There

is no missing testimony as a result of the mechanical failure that would warrant remanding the matter to obtain that testimony. Therefore, even though the court's reasons for judgment were inadequate as far as providing insight into its ruling, the court's review is limited to determining whether the trial court correctly applied the law to the facts it found, due to the presumption that the judgment is supported by competent evidence.

***Retroactive Application of Judgment***

In this case, a trial was held for the sole issue of determining final child support. Following the trial, the court rendered the December 2021 judgment setting final child support in the amount of $700 per month payable by Ledet to Diapaul, with payments to commence January 1, 2022. However, the judgment also provided that the two interim orders were to be modified retroactively such that Ledet was to be reimbursed for his total overpayment made prior to the date of judgment, which was calculated by determining the allegedly proper support amounts per year based on evidence submitted at trial. It does not appear from the record that the final child support amount itself ($700 per month payable by Ledet to Diapaul) was applied retroactively; rather, there was simply a retroactive recalculation of the support amounts determined on an annual basis. In other words, the trial court made a final determination of child support, for which the amount was to be applied prospectively, but also retroactively modified the interim orders (though not by applying the final support amount retroactively, but instead just recalculating several years of support amounts).

It is apparent that the trial court either misapplied or misread the provisions in La. R.S. 9:315.21 regarding the retroactivity of child support judgments. The statute provides, in relevant part, as follows:

> A. Except for good cause shown, a judgment awarding, modifying, or revoking an *interim* child support allowance shall be retroactive to the date of judicial demand, but in no case prior to the date of judicial demand.
>
> B. (1) A judgment that *initially* awards or denies *final* child support is *effective as of the date the judgment is signed* and *terminates an interim child support* allowance as of that date.
>
> (2) If an *interim* child support allowance is *not in effect* on the date of the *judgment awarding final child support*, the judgment shall be *retroactive* to the date of judicial demand, except for good cause shown, but in no case prior to the date of judicial demand.
>
> C. Except for good cause shown, a judgment modifying or revoking a final child support judgment shall be retroactive to the date of judicial demand, but in no case prior to the date of judicial demand.
>
> D. Child support of any kind, *except that paid pursuant to an interim child support* allowance award, provided by the judgment debtor from the date of judicial demand to the date the support judgment is signed, to or on behalf of the child for whom support is ordered, shall be credited to the judgment debtor against the amount of the judgment.
>
> [*Emphasis added*.]

Retroactivity of the child support award depends on whether it is derived from an *interim* allowance versus a *final* child support determination, as well as whether an interim allowance is in place at the time of a final determination.

If there had *only* been a modification of an interim order – that is, no final child support had been set – the judgment modifying the interim order would be retroactive to the date of judicial demand, per La. R.S. 9:315.21(A). That is not the case at hand. Here, there was a determination

of final child support when an interim child support allowance had been in place, such that La. R.S. 9:315.21(B)(1) would apply.

The Louisiana Supreme Court's decision in *Vaccari v. Vaccari*, 10-2016 (La. 12/10/10), 50 So. 3d 139, is the controlling authority regarding the retroactivity of a final child support judgment when an interim award is in place, under La. R.S. 9:315.21(B)(1). In *Vaccari*, the payor spouse, Mr. Vaccari, grossly misrepresented his income in an affidavit at the hearing to set interim support to be $262,000 per year, when it was actually more than $3.5 million for the year in question. *Id*. Based upon the misrepresentation, the trial court ordered Mr. Vaccari to pay interim child support of $7,000 per month. *Id*. When the court-appointed forensic accountant discovered the discrepancy, the trial court found that Ms. Vaccari was entitled to a final child support award of $16,546 per month, retroactive to the date of judicial demand. *Id*. The Court of Appeal reversed the trial court's ruling, finding no statutory authority to make the award retroactive. *Id*. The Supreme Court reversed the court of appeal and reinstated the trial court's judgment, finding that La. R.S. 9:315.21(B)(1) did not *expressly forbid* a court from making a final child support award retroactive when an interim allowance was in place, and may do so upon a showing of good cause. *Id*.

The Supreme Court in *Vaccari* found good cause for the final child support award to be retroactive to the date of judicial demand. First, the Court judicially recognized Mr. Vaccari's continuing obligation to support his children in accordance with his true income, noting that, "This holding is in accord with the stated policy goals of Louisiana's child support statutes and affirms long held civilian concepts regarding the ongoing nature of the

10

child support obligation." *Id*. at 144. It further stated that, "While ultimately guided by the legislation, we are also persuaded by the equities of this case." *Id*. The Court explained, "This is not to say a final child support award must be retroactive, or even that it should be made retroactive in every proceeding. But in cases such as this one, where a party files a false affidavit in an effort to avoid the full extent of his child support obligation, it is only proper to make the award retroactive so he will not benefit from his own misdeeds." *Id*. at 141. The Court pointed out that Mr. Vaccari had long avoided paying what he rightfully owed in child support by misleading the trial court through his "obfuscatory tactics," so retroactivity of the final support award merely treated him as if he had been truthful all along. *Id*.

Case law following *Vaccari* supports that the "good cause" exception to La. R.S. 9:315.21, allowing retroactivity of a final child support award retroactive when an interim allowance is in place, is a very limited one. "While [*Vaccari*] clearly opens the door for trial courts to make final child support judgments retroactive to the date of judicial demand when an interim support award had been in effect, retroactivity is the exception, not the rule." *Shaw v. Shaw*, 46,993 (La. App. 2 Cir. 4/5/12), 87 So. 3d 235, 240. This Court further noted in *Shaw* that the Supreme Court's decision in *Vaccari* shifted the burden of proof to the obligee to show good cause in order for the final award to be retroactive. *Id*.

In *Shaw*, the parties entered into an interim agreement in which Mr. Shaw paid a nominal amount of child support due to his unemployment. *Id*. When a final determination of support was made, Mr. Shaw's income had increased due to obtaining gainful employment, and the court set a much

11

higher monthly support amount. *Id.* The trial court made the final support award retroactive to the date of judicial demand. *Id.* This Court reversed the trial court, holding that the court erred in making the final child support award retroactive to the date of judicial demand because the underlying facts did not rise to the level of egregiousness in *Vaccari*. *Id.* It noted that the parties had agreed to the terms of the interim support award – the amount, effective date, and retroactivity (lack thereof) – and there were no allegations that Ms. Shaw was deceitfully induced into the agreements or that Mr. Shaw misrepresented his finances. *Id.*

In *Coleman v. Coleman*, 47,080 (La. App. 2 Cir. 2/29/12), 87 So. 3d 246, an interim award of $200 per month payable by Mr. Coleman was in place as of August 2009, which he voluntarily increased at some point to $600 per month, before the trial court set a final support amount of $879.30 per month beginning on June 1, 2011. Ms. Coleman initially reported that she was unconcerned with the amount of child support prior to the final judgment, but later argued that the award should be retroactive. *Id.* This Court found no showing of good cause why the final award of child support should be made retroactive to the date of demand, and even amended the judgment to reflect that support be paid beginning four weeks later on June 28, 2011, the exact date of the judgment. *Id.*

The Fifth Circuit in *Rutland v. Rutland*, 13-70 (La. App. 5 Cir. 7/30/13), 121 So. 2d 776, held that the trial court did not err in finding that good cause did not exist to make the child support award retroactive to the date of judicial demand. Per an interim order in April 2011, Mr. Rutland was paying $200 per month in child support to Ms. Rutland, the custodial

12

parent, based on his unemployed status. *Id.* The court ultimately awarded a final support amount of $474.90 effective September 2012, based on Mr. Rutland's obtaining employment by that time, and concluded that the record did not support a finding of misrepresentation of material facts or other misdeeds by Mr. Rutland to such an extent as to justify a conclusion that the trial court abused its discretion in applying the *Vaccari* standard. *Id.* It noted that, "Clearly the facts of this case do not rise to the level of atrocious misrepresentations that led to the holding in *Vaccari*." *Id.* at 781.

In *Miles v. Hunter*, 14-0669 (La. App. 1 Cir. 11/20/14), 168 So. 3d 430, the parties entered into an initial stipulated judgment on January 23, 2013, that ordered Mr. Miles to pay interim child support in the amount of $200 per month. The parties entered into a second stipulated judgment on July 9, 2013, that increased interim child support payable by Mr. Miles to $796.66 per month, which stated that the retroactive child support issue would be determined at trial. *Id.* Following trial on September 30, 2013, the court set Mr. Miles' monthly support obligation in the amount of $1,006.32 commencing October 1, 2013. *Id.* However, child support for the period of October 29, 2012 (date of judicial demand), to September 30, 2013, was set for $1,035.16 per month, with a credit for all payments made pursuant to the previous interim orders. *Id.* The judgment also provided that all child support arrearages were made executory. *Id.* Although Ms. Hunter argued that the interim award was set without full review of the parties' financial records, the Fifth Circuit held that there was no evidence that Mr. Miles misrepresented material facts regarding his finances to avoid his child support obligation, and vacated the portion of the trial court's judgment

13

retroactively setting child support for the period of October 29, 2012 to September 30, 2013. *Id.* The portion of the judgment ordering that arrearages be made executory was also vacated. Because final child support was no longer applied retroactively, there were no longer any arrearages. *Id.*

In *McClanahan v. McClanahan*, 14-670 (La. App. 5 Cir. 3/25/15), 169 So. 3d 587, the trial court made a June 20, 2007, support awards judgment retroactive to the point at which it believed the parties had reached an off-record agreement as to the effective date of a child support award, March 28, 2003, although the parties had entered into an informal agreement regarding interim support on or about April 30, 1998. *Id.* The trial court held that, because it considered the informal agreement between the parties merely a "letter agreement" that was not made a judgment of the court, there was no valid interim agreement regarding child support in effect at the time of the judgment. *Id.* As a result, it applied the reasoning under La. R.S. 9:321(B)(2), whereby the *default* effective date of the final support award was retroactive to the date of judicial demand, February 4, 1999. *Id.* However, the court found that good cause existed for the award *not* to be made retroactive to the date of judicial demand because of the parties' off-record agreement to commence support payments as of March 28, 2003. *Id.*

The Fifth Circuit in *McClanahan* found that the trial court committed legal error by not giving full legal effect to the terms of the parties' "interim agreement" on support because it was a valid and enforceable contract despite not being made a judgment of the court. The Court emphasized in its ruling that the agreement clearly provided for interim support "allowances," and was in place at the time the judgment granting final support was

14

rendered. *Id.* As a result, La. R.S. 9:315.21(B)(1) should have been applied so that the default effective date of support was the date of judgment, unless good cause were shown to make the award retroactive. *Id.* It further found that *Vaccari* was inapplicable in the case and there was no good cause for retroactivity of the support amount because the parties agreed to the terms of the "interim agreement" without reference to any specific income information, and no fraud or misdeeds were alleged to have been committed in the confection of the parties' interim agreement. *Id.*

*Vaccari* was also not followed in *Keith v. Keith*, 18-1222 (La. App. 1 Cir. 3/20/19), 2019 WL 1292361. Following a status conference, an order was entered on May 9, 2017, in which the parties stipulated to an interim award of $3,000 per month payable by Mr. Keith. *Id.* After trial, judgment was entered on March 22, 2018, setting final child support in the amount of $2,698.00 per month to be paid by Mr. Keith as of the date of the hearing, March 2, 2018. *Id.* Mr. Keith argued that the award should have been applied retroactive to the date of judicial demand, January 3, 2017, because there was no evidence of either party's income at the time of the interim order, and that based upon tax returns, the interim award should have been set at $1,475.56; therefore, he should be entitled to a return of his total overpayment. *Id.* The First Circuit agreed with the trial court and held that it did not abuse its discretion in finding that there had been no showing of good cause to apply the final support award retroactively. *Id.*

The only case this Court is aware of in which good cause for retroactivity was found was *St. Philip v. Montalbano*, 16-0254 (La. App. 1 Cir. 10/31/16) 206 So. 3d 909. An interim judgment making a provisional

15

award of child support to Ms. St. Phillip was entered on March 26, 2015, three years after Ms. St. Philip filed a motion to set child support. *Id.* It appears that Mr. Montalbano paid little or no child support during the three-year period before the interim judgment. *Id.* The judgment specifically reserved Ms. St. Philip's right to pursue "a permanent and retroactive child support award to the date of demand." *Id.* A hearing was held on June 16, 2015, after which the trial court ordered Mr. Montalbano to pay $666.00 per month in support to Ms. St. Philip. *Id.* An additional hearing was held on October 26, 2015, in which the court awarded Ms. St. Philip the following amounts of child support: $1,325 per month from March 6, 2012, through December 31, 2012; $1,042 per month for the full year of 2013; $1,407 per month for the full year of 2014; and $666.00 per month from January 1, 2015, through June 30, 2015, subject to credits for any prior payments made during those periods. *Id.*

The First Circuit upheld the trial court's finding of retroactivity. *Id.* The Court pointed out that the interim judgment reserved Ms. St. Philip's right to pursue retroactive support, which was later determined at a separate hearing. *Id.* The Court also noted that Mr. Montalbano had repeatedly delayed Ms. St. Philip's request for child support by filing multiple motions to continue, resulting in a three-year gap in the child's support. *Id.* It emphasized that the trial court's award of support retroactive to the date of demand remedied the gap in support and was consistent with Louisiana's civilian concept that the child support obligation pre-exists the judgment. *Id.*

In the matter at hand, the parties stipulated to the terms of the two interim orders in which Ledet was to pay child support to Diapaul in the

amount of $2,500 per month. The parties agreed to the terms and there was no provision in the order that a final determination was to be retroactive to the date of judicial demand, other than a reference that the orders were entered "without prejudice." The record indicates that Ledet made regular payments pursuant to the agreements from at least the date of the first interim order, August 22, 2014, until the judgment was entered setting final child support on December 15, 2021 – a period of over *seven* years. Ledet filed a motion to reduce child support on May 12, 2017, but the matter continued to be delayed for various reasons seemingly attributable to *both* parties. There were no allegations or evidence of any fraudulent or egregious behavior by either party. As a result of the extensive delay, Ledet made a large total *overpayment* in excess of what his obligation would have been had a final determination been made at a much earlier, timely date. There was never any "gap" in child support in which the child was not adequately provided for by either party. In addition, there is no indication that Diapaul *underpaid* (at least until just prior to trial when her income exceeded Ledet's), nor did she ever agree that Ledet was overpaying or believe that she would be expected to reimburse him for overpayments – in fact, she strongly expressed her shock at the trial court's judgment, noting that her income had never been sufficient enough to absorb such an impact.

Ledet focuses on the fact that the interim orders in place leading up to the judicial determination of child support were "without prejudice" in order to provide support until such time that the parties secured the appropriate evidence and trial time was available, arguing that they were left open to "modification" by way of the final determination. His reasoning is

misplaced. As supported by the jurisprudence discussed hereinabove, the fact that the interim orders were in place for the purpose of providing support until trial speaks only to the "interim" status of the orders – it does not imply that they can be retroactively modified. The inclusion of the phrase, "without prejudice," without further description, would simply mean that any terms and provisions included in the interim agreements could not be factors for consideration in the final determination of support, such that *either* party was prejudiced. In other words, the court cannot, for example, let the fact that Ledet agreed to pay $2500 per month at the time of the interim order sway its decision in how much either party should ultimately be ordered to pay or not pay because it has a duty to comply with the Louisiana child support guidelines. Ledet argues that he made the ongoing support payments because he was operating under the *assumption* that "without prejudice" equated to the retroactive application of the final support amount, but no specific provision regarding that assumption was included in either interim order when it easily could have been addressed. For that matter, it is apparent from the record that Diapaul assumed the opposite – because the orders were silent as to retroactivity, she would not be required to reimburse for any possible overpayment.

Case law supports that there are very limited "good cause" exceptions to the rule in La. R.S. 9:315.21(B)(1) that the final child support judgment is effective as of the date the judgment is signed and terminates an interim child support allowance as of that date. The obligee in this case, Ledet, has the burden of proof to show that good cause exists for applying the December 2021 judgment retroactively to the date of judicial demand,

18

consistent with *Vaccari* and its progeny.  Although it does not appear from the record that Ledet has met his burden of showing good cause, there is a presumption that the trial court's December 2021 judgment is supported by competent evidence, such that review is limited to determining whether the court correctly applied the law to the facts it found.  *Rose*, *supra*.

It is clear in this case that the trial court misinterpreted or misapplied the provisions of La. R.S. 9:315.21.  Since the trial court, as fact-finder, is in the best position to determine whether good cause exists to support the application of the final child support award in the December 2021 judgment retroactive to the date of judicial demand, we are remanding this matter to for a proper determination pursuant to La. R.S. 9:315.21(B)(1) and *Vaccari*, as consistent with this opinion.

*Child Support Guidelines*

The December 2021 judgment ordered Ledet to pay Diapaul $700 per month in child support, pay the child's private school tuition, maintain the child on insurance, pay 100% of noncovered medical expenses, and pay 50% of agreed extracurricular activities for the child.  However, the record shows that by the parties' most current financial information, Diapaul's income exceeded Ledet's, such that *Diapaul* should actually be the support obligor, not Ledet.  The trial court provided sufficient reasons for ordering Ledet to pay the child's tuition and omitting it from the child support calculations, being that the parties agreed to the arrangement at a previous hearing on the issue.  The court gave no reasoning as to Ledet's payment of $700 per month plus all medical expenses.

19

It is uncertain to what extent the trial court reviewed and/or complied with the child support guidelines provided in La. R.S. 9:315 because the only reasons for judgment in the record were those derived from the 2131 hearing, which provided no insight as to the support figures. La. R.S. 9:315.1 provides, in part, as follows:

> A. …There shall be a rebuttable presumption that the amount of child support obtained by use of the guidelines set forth in this Part is the proper amount of child support.
> B. (1) The court may deviate from the guidelines set forth in this Part if their application would not be in the best interest of the child or would be inequitable to the parties. The court shall give specific oral or written reasons for the deviation, including a finding as to the amount of support that would have been required under a mechanical application of the guidelines and the particular facts and circumstances that warranted a deviation from the guidelines. The reasons shall be made part of the record of the proceedings.

La. R.S. 9:315.1(C) provides a list of the court's considerations in determining whether to deviate from the guidelines. There were no oral or written reasons for any potential deviations from the guidelines. The trial court erred due to its failure to comply with the guidelines set forth in La. R.S. 9:315 to obtain the proper amount of child support, and to provide any reasons for deviation therefrom.

***Motion in Limine***

Ledet filed a motion in limine just before trial, on November 24, 2021, seeking an order prohibiting Diapaul from calling any witnesses to testify other than herself at the trial, and further prohibiting her from introducing any documentary evidence. The record supports Ledet's contention that Diapaul failed to comply with the trial court's scheduling and discovery orders, which included the failure to provide a bench book upon commencement of the trial. However, the court deferred its ruling on the

20

motion and provided extensive leeway to Diapaul during trial, even allowing her to introduce new evidence. We find that the trial court must rule on Ledet's motion in limine prior to any additional proceedings in this matter upon remand.

## CONCLUSION

For the foregoing reasons, this Court REVERSES the trial court's judgment rendered on December 16, 2021, as it pertains to: (1) the retroactive application of the final child support award and order for Diapaul to repay Ledet's overpayment of child support made during the period of the two interim orders; and (2) the setting of final child support in the amount of $700 per month payable by Ledet unto Diapaul, plus Ledet's maintenance of the child's health insurance and payment of 100% of uncovered medical expenses. We REMAND to the trial court for a determination of (1) the application of the final child support award retroactive to the date of judicial demand in accordance with La. R.S. 9:315.21 and applicable jurisprudence; and (2) final child support in accordance with the guidelines set forth in La. R.S. 9:315; as consistent with this opinion. Court costs related to appeal are to be taxed proportionately between the parties.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**